[No. H022764. Sixth Dist. July 19, 2002.]

JOHN PAUL FURMAN, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

418

## Counsel

Bill Lockyer, Attorney General, David S. Chaney, Assistant Attorney General, Damon M. Connolly, Miguel A. Neri and Denis S. Kenny, Deputy Attorneys General, for Defendant and Appellant.

Page, Salisbury & Dudley and Arthur Dudley for Plaintiff and Respondent.

## Opinion

**MIHARA, J.**—The superior court issued a writ of mandate directing appellant Department of Motor Vehicles (the DMV) to set aside its suspension of respondent John Paul Furman's driving privilege and reinstate Furman's driving privilege. The court found that the forensic alcohol analysis submitted by the DMV in support of the suspension was not sufficient competent evidence to support the suspension because it would not have been admissible over a hearsay objection in a civil action. The DMV appeals, claiming that the analysis would have qualified for admission in a civil action under Evidence Code section 1280's exception to the hearsay rule in conjunction with Evidence Code section 664's presumption that official duty has been regularly performed. We conclude that the DMV, as the proponent of the

document, failed to establish that it had been prepared by a person with an official duty. Therefore, the document was not sufficient competent evidence to support the suspension of Furman's license as it could not have qualified for admission over a hearsay objection in a civil action. We affirm.

## I. *Background*

Furman was detained by law enforcement at 1:20 a.m. on June 20, 2000, after he failed to stop at a stop sign. After an officer observed that Furman was exhibiting objective symptoms of intoxication, he arrested Furman. At 2:18 a.m., Furman had a "blood test."

The DMV held a September 2000 administrative hearing on the suspension of Furman's driving privilege. At the hearing, the DMV submitted a one-page document entitled "Forensic Alcohol Analysis" that stated that Furman's blood had been tested and found to contain "0.17% (W/V) alcohol." This document was on letterhead from "Department of Justice [¶] Bureau of Forensic Services." The document stated that the blood sample had been received on June 23, 2000. It listed the "DATE ANALYSIS COMPLETE" as "6/30/00" and the "DATE OF REPORT" as "7/5/00." The document bore the signature of "MARIANNE PERHACH [¶] Criminalist." No further detail about the source of this information was provided in the document.

Furman objected on hearsay grounds to this document. He contended that the DMV had failed to meet its foundational burden of showing that (1) the document had been prepared by a person with an official duty under title 17 of the California Code of Regulations to perform and record the results of a forensic alcohol analysis and (2) the document had been prepared at or near the time of completion of the analysis. Furman also argued that the DMV's evidence did not establish that his blood had been drawn by a qualified individual in accordance with title 17.

On October 2, 2000, the DMV suspended Furman's driving privilege. On October 31, 2000, Furman filed a petition for a writ of mandate seeking to overturn the suspension. He reiterated the arguments that he had made at the administrative hearing. The DMV opposed the petition. It argued that Furman had the burden of producing evidence challenging the DMV's evidence, and he had not met this burden. The superior court agreed with all three of Furman's contentions, and it issued a writ of mandate requiring the DMV to set aside the suspension and reinstate Furman's driving privilege. The DMV filed a timely notice of appeal.

## II. *Discussion*

Furman maintains that the DMV did not produce sufficient competent evidence to support its suspension of his driving privilege because the

document purporting to show his blood-alcohol level was hearsay that would not have been admissible over objection in a civil action.

## A.  *Standard of Review*

■  "When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations or otherwise respond. . . . The mere fact that the licensee has the right to subpoena witnesses . . . does not relieve the D.M.V. of meeting its burden of producing competent evidence supporting a suspension. Thus, in this case, the licensee had no duty to testify or otherwise rebut the allegations at the hearing until the D.M.V. made a prima facie showing by competent evidence . . . ." (*Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313], citations omitted.) ■  Here, the DMV attempted to make a prima facie showing by relying on the document entitled "Forensic Alcohol Analysis." Furman claims that the DMV did not make the requisite showing because this document was not competent and sufficient proof of his blood-alcohol level.[1]

## B.  *Hearsay Evidence*

The DMV concedes that the document purporting to be a "Forensic Alcohol Analysis" was hearsay evidence, but it argues that this document was nevertheless competent and sufficient to prove Furman's blood-alcohol level. "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence [at an administrative hearing] but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d).) " '[T]here must be substantial evidence to support such a board's ruling, and hearsay, unless specially permitted by statute, is not competent evidence to that end.' " (*Daniels v. Department of Motor Vehicles, supra*, 33 Cal.3d at pp. 536-537.)

Furman made a timely hearsay objection to the document, but the DMV asserts that the document was still sufficient and competent proof because it

---

[1]Furman's driving privilege was suspended based on a finding that he drove a vehicle with a blood-alcohol level of .08 or higher. "Only an objective scientific test can establish that fact." (*Shea v. Department of Motor Vehicles* (1998) 62 Cal.App.4th 1057, 1061 [72 Cal.Rptr.2d 896]; *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 817, fn. 7 [3 Cal.Rptr.2d 478].) Hence, other circumstantial evidence of his intoxication was insufficient to support the DMV's suspension of his driving privilege.

would have been admissible over a hearsay objection in a civil action. The DMV bases this assertion on its claim that the document came within Evidence Code section 1280's exception to the hearsay rule. "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280.)

■ "A forensic alcohol report becomes an official record of the DMV, and thus admissible at an administrative per se hearing, *if* it complies with the requirements governing the admission of evidence. . . . This includes hearsay. Although a forensic report is hearsay, it falls within the public employees record exception to the hearsay rule *if the proponent of the report (here, the DMV) establishes the necessary foundation for its admission.*" (*Shea v. Department of Motor Vehicles, supra*, 62 Cal.App.4th 1057, 1059, citation omitted, italics added.) ■ The DMV, as the proponent of the document, bore the burden of "producing evidence sufficient to establish the necessary foundation" for a finding that the hearsay evidence came within Evidence Code section 1280's exception to the hearsay rule. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1177 [64 Cal.Rptr.2d 892, 938 P.2d 950].)

The "act, condition, or event" in question here was the forensic alcohol analysis of Furman's blood sample. To come with Evidence Code section 1280's hearsay exception, the document had to (1) be a record made by a public employee with a duty to perform, and record the result of, a forensic alcohol analysis, (2) have been made at or near the time of completion of the analysis, and (3) have been made under circumstances that reflected that it was trustworthy.

Furman challenges the DMV's assertion that the document met the first of these three requirements. He claims that there was no basis for a foundational finding that the document was prepared by a public employee with a duty to perform, and record the results of, a forensic alcohol analysis. The DMV, on the other hand, maintains that its foundational burden was satisfied by the presumption of official duty regularly performed that arises under Evidence Code section 664. The DMV claims that Evidence Code section 664 creates a presumption that "the entities and individuals who administer, analyze and report blood-alcohol-test results" properly perform their "official" duties in compliance with applicable regulations. It asserts that this presumption shifted the burden to Furman to establish that the forensic alcohol analysis had not been properly performed.

■ Evidence Code section 664 provides that "[i]t is presumed that official duty has been regularly performed." "California courts have applied this presumption in finding that proffered evidence satisfies the foundational requirements of the official records exception." (*People v. Martinez* (2000) 22 Cal.4th 106, 125 [91 Cal.Rptr.2d 687, 990 P.2d 563].) However, Evidence Code section 664's presumption applies only where a person has an "official duty" to perform an act. (*Martinez, supra*, at p. 130, fn. 8.) It is this "official duty" that underlies both Evidence Code section 664's presumption and Evidence Code section 1280's exception to the hearsay rule. " ' "The fundamental circumstance is that *an official duty exists to make an accurate statement*, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment. . . . It is the influence of the official duty, broadly considered, which is taken as the sufficient element of trustworthiness, justifying the acceptance of the hearsay statement." . . .' " (*People v. Martinez* (2000) 22 Cal.4th 106, 130, fn. 8 [91 Cal.Rptr.2d 687, 990 P.2d 563], citation omitted, italics added.)

■ Furman argues that neither Evidence Code section 664 nor Evidence Code section 1280 was applicable here because the DMV, the proponent of the document, provided no foundation that could have supported a finding that the individual who prepared the "Forensic Alcohol Analysis" had an "official duty" to perform and record the results of a forensic alcohol analysis of Furman's blood sample. We are compelled to agree. The DMV did not offer any foundational evidence either at the administrative hearing or in the trial court. The performance of "Forensic Alcohol Analysis" is subjected to strict regulation by title 17 of the California Code of Regulations.[2] These regulations do not support the DMV's claim that the "Forensic Alcohol Analysis" it offered at the hearing was prepared by a person with an "official duty" to perform and record the results of such analyses.

The document purported to record the performance of a "Forensic Alcohol Analysis" of Furman's blood sample by Marianne Perhach, who was identified as a "Criminalist." Title 17 expressly rebuts any inference that a "Criminalist" has an "official duty" to perform a "Forensic Alcohol Analysis." Instead, title 17 expressly specifies those who are authorized to perform

[2] " 'Forensic Alcohol Analysis' means the practical application of specialized devices, instruments, and methods *by trained laboratory personnel* to measure the concentration of ethyl alcohol in samples of blood, breath, urine, or tissue of persons involved in traffic accidents or traffic violations." (Cal. Code Regs., tit. 17, § 1215.1, subd. (b), italics added.) A "Forensic Alcohol Laboratory" is a place where "specialized apparatus, instruments, and methods are used by *trained laboratory personnel* to measure the concentration of alcohol in samples of blood . . . ." (Cal. Code Regs., tit. 17, § 1215.1, subd. (e), italics added.) "Forensic alcohol laboratories and law enforcement agencies shall maintain records which clearly represent their activities which are covered by these regulations." (Cal. Code Regs., tit. 17, § 1222.)

forensic alcohol analysis. "Forensic alcohol analysis *shall be performed only by persons* who meet the qualifications set forth in these regulations for *forensic alcohol supervisors, forensic alcohol analysts, or forensic alcohol analyst trainees* [working under the supervision of a forensic alcohol supervisor or forensic alcohol analyst]." (Cal. Code Regs., tit. 17, § 1216, subd. (a)(1), italics added.) Title 17 also specifies the duties and qualifications of forensic alcohol analysts, forensic alcohol supervisors and forensic alcohol analyst trainees. (Cal. Code Regs., tit. 17, §§ 1215.1, subds. (f) & (g), 1216.1, subds. (e) & (f).) Title 17 makes no mention of criminalists.

The record before us does not reflect that Perhach, the author of the document, was among those authorized by title 17 of the California Code of Regulations to perform forensic alcohol analysis, and therefore she could not have had an "official duty" to perform unauthorized analyses. Nor is there any indication in the record that Perhach or any "Criminalist" had an official duty to record the results of forensic alcohol analyses performed by authorized individuals. The absence of an official duty precludes the application of either Evidence Code section 664's presumption or Evidence Code section 1280's exception to the hearsay rule.[3] It follows that the document was hearsay that was not sufficient competent evidence of Furman's blood-alcohol level. The DMV does not claim that there was other evidence of Furman's blood-alcohol level that this document was only intended to supplement. Consequently, the DMV failed to make a prima facie showing that Furman had an excessive blood-alcohol level, and the trial court did not err in granting Furman's petition and issuing a writ of mandate overturning the suspension of Furman's driving privilege.

### III.   *Disposition*

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Rushing, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 23, 2002.

---

[3]We therefore need not consider whether the DMV also failed to provide a foundational showing that the document was prepared at or near the time of completion of the analysis.