Filed 8/18/20  Gonzalez v. The Vapor Trail CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ERICK GONZALEZ, Plaintiff and Appellant, v. THE VAPOR TRAIL, Defendant and Respondent. | D075382 (Super. Ct. No. 37-2015-00009336- CU-PL-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, David G. Brown, Judge.  Affirmed.

William J. Brown III; Richards Law Firm, John T. Richards and Evan E. Willis for Plaintiff and Appellant.

Gates, Gonter, Guy, Proudfoot & Muench, Douglas D. Guy and Christopher R. Allison for Defendant and Respondent.

After a vaping device plaintiff Erick Gonzalez was using exploded in his face, he filed a products liability lawsuit against the component manufacturers and the store from which he claimed to have purchased the device, defendant Chris Hartjen dba The Vapor Trail (Vapor Trail).  By the time of trial, Vapor Trail was the only remaining defendant.  The jury found

Vapor Trail had not sold the device to Gonzalez, and the trial court thereafter entered judgment for the defense.

Gonzalez raises several contentions on appeal. First, he contends the trial court erred by excluding evidence he maintains would have shown that Vapor Trail was the only retailer in San Diego County that sold the device at issue (and, thus, likely sold one to him). Second, Gonzalez contends "the judge's hostility and bias" toward him compels reversal and a new trial. (Capitalization and bolding omitted.) Finally, he contends substantial evidence does not support the defense verdict. For reasons we will explain, we reject these contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2015, Gonzales filed a products liability lawsuit seeking damages for injuries he sustained when a vaping device exploded in his face.

The device at issue consisted of several key components: (1) a stainless-steel "vaporizer" or "mod" (essentially, a metal tube that housed the remaining components) manufactured by VLS[1] and sold under the name "Ragnarok"; (2) a battery; and (3) an "atomizer," into which the user places a coiled metal wire, cotton, and vaping "juice," which, when heated, creates an inhalable vapor "cloud." A cofounder of VLS, which manufactured only the mod for the device at issue, analogized vaping devices to flashlights: "[The] mod is actually a mechanical device that—basically, it's a tube that—you place a battery in there, and you place an atomizer. Just think of it like a flashlight. The flashlight base is the tube. You need the light bulb. You need a battery to turn it on. We manufactured the tube."

---

[1] Gonzalez's complaint named "VLS INVESTMENT GROUP, a.k.a. VAPOUR LIFESTYLE."

Device components made by different manufacturers are generally interchangeable, and the overall device requires assembly. There was conflicting testimony at trial about who assembled Gonzalez's device (Gonzalez or the store from which he purchased it). Some components, like the wire and cotton, wear out with use and require occasional replacement. The device at issue was "unregulated," meaning it did not have a computer chip that regulated electrical resistance in the coiled wire to prevent overheating; thus, it required the user to determine electrical resistance with an ohmmeter or by calculating it using a scientific formula.

Gonzalez testified at trial that he lived in Ramona during the relevant timeframe. In 2008, he began working at a liquor store and smoking cigarettes. In October or November 2014, he began vaping to help him quit smoking cigarettes. He claimed he began with a secondhand vaping device he purchased from his liquor store coworker, Edgar Nieto. A few months later, Gonzalez claims to have purchased the device at issue from Vapor Trail, a vaping supply store located near the liquor store where Gonzalez worked. He paid cash and did not keep the receipt.

Gonzalez testified that on February 7, 2015, he was using the device while working at the liquor store. The device exploded in his face, inflicting serious trauma for which he was hospitalized and placed in an induced coma for two weeks. Gonzalez insisted he purchased all his vaping supplies at Vapor Trail, and specifically denied ever shopping online or at a store in La Mesa called Sun Vape.

One of VLS's seven cofounders, Steve Trang, testified at trial. VLS was founded in 2006 or 2009, and went bankrupt in 2016 because of this lawsuit. VLS made only one mod product, the Ragnarok, which was available in either copper or stainless steel. Each Ragnarok unit bore a unique sequential serial

number that was meaningful to collectors in the vaping community, but was not something VLS tracked for sales purposes.

VLS began selling the Ragnarok in October 2014 at trade shows. VLS sold only to retailers; it did not sell directly to consumers. By late 2014, VLS had over 800 retail customers, only two of which were located in San Diego County: Vapor Trail and Sun Vape. Vapor Trail purchased 22 stainless-steel Ragnaroks from VLS between October 2014 and January 2015. Trang initially testified Sun Vape did not purchase any stainless-steel Ragnaroks during the relevant timeframe. However, as we discuss in detail in part I, *post*, the trial court granted Vapor Trail's motion to strike this testimony as hearsay.

Based on photographs shown at trial, Trang confirmed the serial number on Gonzalez's Ragnarok (1724) was only three units away from the serial number of a Ragnarok (1727) shown in a December 2014 Vapor Trail social media advertisement. Gonzalez suggested this meant Vapor Trail had sold him the Ragnarok at issue, but Trang reiterated VLS did not track serial numbers and the units possibly "could have been sold to any one of [VLS's] customers."

Gonzalez's liquor store coworker, Edgar Nieto, testified he was present when the incident occurred, and called 911. Nieto also vaped, and was a regular customer at Vapor Trail. Nieto had purchased a copper Ragnarok from Vapor Trail a few months before Gonzalez bought his stainless-steel one, but Nieto testified he never told Gonzalez where he bought his. Nieto denied selling an old vaporizer to Gonzalez. Nieto testified that when he once saw Gonzalez's Ragnarok disassembled, he (i.e., Nieto) advised Gonzalez that the wire used for the coil was too thick, but Gonzalez was "a proud person"

4

and said "he was going to keep the wire in that he wanted." Nieto had never seen the thicker wire for sale at Vapor Trail.

Vapor Trail's owner, Chris Hartjen, testified he opened Vapor Trail in early 2014. After discovering the Ragnarok at a vaping convention in October 2014, he bought five stainless-steel units at the convention and applied to be a VLS vendor so he could order more. By late January 2015, Hartjen had ordered 22 stainless-steel Ragnaroks from VLS. He did not track their serial numbers.

Hartjen testified several factors led him to conclude Vapor Trail had not sold a stainless-steel Ragnarok to Gonzalez. First, Hartjen recognized Gonzalez as a regular customer and did not recall selling him a Ragnarok. Second, Hartjen confirmed with his employees that none of them recalled selling a Ragnarok to Gonzalez. Third, Vapor Trail's bookkeeping software showed several transactions with Gonzalez, but none included a Ragnarok.[2] Fourth, photographs of Gonzalez's device after the incident showed he was using a wire larger than any that Vapor Trail sold. Finally, other stores in Ramona sold vaping supplies, and Hartjen believed one of them also sold Ragnaroks.

Hartjen provided some detail about Vapor Trail's bookkeeping software. Each product and customer were assigned a unique number that Vapor Trail employees logged in the terminal during each transaction. Customers who identified themselves received loyalty discounts. However, if the store was too busy or a customer did not wish to identify him or herself, the software assigned "1721942" as the number for "unknown" customer.

---

[2] For example, the records showed Vapor Trail performed cleaning services for Gonzalez in November and December 2014, which suggested he had purchased used products and was having them sanitized.

The bookkeeping software recorded 12 sales of stainless-steel Ragnaroks between November 2014 and the year 2016; none were associated with Gonzalez's customer number, and four were to unknown customers. Hartjen admitted he knew how to delete certain entries from the software, but denied ever doing so.

Hartjen acknowledged that the December 2014 Vapor Trail social media advertisement showed a Ragnarok with a serial number only three units off from Gonzalez's (1727 versus 1724). But Hartjen reiterated he did not track serial numbers and maintained he had not sold the unit to Gonzalez. Hartjen acknowledged the photo subsequently disappeared from Vapor Trail's social media account history, but he denied intentionally deleting it and noted his cousin (Hartjen's business partner) also had access to the social media account.

A forensic accountant testified for Vapor Trail. Based on her review of the parties' discovery responses, deposition testimony, and Vapor Trail's bookkeeping records, she concluded Gonzalez had not purchased the device at issue from Vapor Trail. She acknowledged the bookkeeping records had numerous entries for "unknown" customers, and that the data "is only as good as the data entry put into it," but she did not "find any red flags or irregularities that maybe something was out of the ordinary with the recordkeeping . . . ." Moreover, even though the entries for some transactions were with unknown customers, those entries still contained "the date, the time of sale, [and] the type of sale." Using this information, she confirmed that no transactions included all the other products Gonzalez claimed he had purchased when he purchased the Ragnarok.

After deliberating less than one hour, the jury reached a defense verdict. The jury answered "NO" to the first question on the special verdict

form—"Did Chris Hartjen sell a vaporizer to Erick Gonzalez?"—and followed the form's instruction that "[i]f you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form." The court entered judgment for Vapor Trail, and later denied Gonzalez's motions for judgment notwithstanding the verdict and for a new trial.

## DISCUSSION

### I. *Exclusion of Evidence of Sales by VLS to Sun Vape*

VLS's cofounder, Steve Trang, testified in his deposition that VLS had only two retailers in San Diego County (Vapor Trail and another he could not recall by name), and that he was storing now-defunct VLS's records at his house until the conclusion of this litigation. At trial, Trang identified the second retailer as Sun Vape, and further testified that Sun Vape had not purchased any stainless-steel Ragnaroks during the relevant timeframe (and, thus, only Vapor Trail had). When Trang later clarified that he knew about the lack of sales to Sun Vape solely by reviewing a VLS invoice to Sun Vape (the Sun Vape invoice), which he had not brought to court, the trial court granted Vapor Trail's motion to strike, as hearsay, Trang's testimony about the lack of sales to Sun Vape. The court did not strike Sun Vape's identity as the second retailer.

Gonzalez contends exclusion of the Sun Vape invoice was prejudicial error because (1) the invoice was admissible as a business record, (2) Trang could use the invoice to refresh his recollection, and (3) the testimony did not unfairly surprise Vapor Trail. We conclude that because Gonzalez did not meet his burden of establishing that the business records hearsay exception applied or that Trang had an independent recollection to properly refresh, the trial court did not err in striking Trang's testimony. We do not address

7

Gonzalez's arguments regarding unfair surprise because, as he acknowledges, the trial court did not base its ruling on that ground.

## A. *Background*

At trial, on direct examination by Gonzalez's counsel, Trang—VLS's cofounder and "I.T. and financial guy"—testified that Vapor Trail and Sun Vape were VLS's only retail customers in San Diego County, and that Vapor Trail was the only one that purchased stainless-steel Ragnaroks in 2014. Trang acknowledged that during his deposition he had not mentioned Sun Vape by name or stated whether Sun Vape had purchased stainless-steel Ragnaroks. But he explained he had since reviewed VLS's "Quickbooks database" and confirmed these facts.

On cross-examination, Trang testified he never worked in sales at VLS, and had limited knowledge about Sun Vape (e.g., he had to look up its location (La Mesa), and was unaware of its size and distribution network). Trang said he had not spoken with Gonzalez's counsel about his (i.e., Trang's) anticipated trial testimony or any changes to his deposition testimony.

On redirect, Trang reiterated that his review of VLS's records indicated VLS had "never sold [Sun Vape] the stainless-steel Ragnarok" and, thus, Vapor Trail was "the only vape shop in San Diego County that had the" device during the relevant timeframe.

On re-cross, Trang confirmed that his testimony about VLS's sales to Sun Vape was based solely on his review of documents he had not brought with him to court. Once Trang confirmed this, Vapor Trail's counsel moved to strike Trang's testimony about sales to Sun Vape on hearsay and foundational grounds. The court released the jury for the afternoon recess and heard extensive argument on the motion, which ended up consuming the remainder of the court day.

8

Vapor Trail's counsel argued that because Trang "is, admittedly, not the sales guy," he lacked personal knowledge about VLS's sales to Sun Vape and, thus, his testimony was based on hearsay. Further, because Trang had not brought the Sun Vape invoice to court, Vapor Trail's counsel argued Gonzalez could not show it fell within the business records hearsay exception. Gonzalez's counsel conceded Trang "did not bring [the] invoice" to court, but argued the invoice nonetheless fell within the business records exception.

Under questioning by the court, Trang repeatedly confirmed that his knowledge regarding VLS's sales to Sun Vape was based solely on his review of the Sun Vape invoice, which he had not brought to court. Trang testified he told Gonzalez's counsel this information when they were coordinating Trang's anticipated trial appearance. Gonzalez's counsel acknowledged he had received the information the night before and had not shared it with Vapor Trail's counsel, but argued the information should come as no surprise because Trang had mentioned in his deposition that he (1) knew VLS had another retailer in San Diego County, (2) did not remember the other retailer's name, and (3) was maintaining VLS's business records at his house until the end of this litigation.

Based on Trang's clarification, the court ruled that his testimony about VLS's lack of sales to Sun Vape was "clearly . . . a hearsay statement." Further, because the Sun Vape invoice was not present in court, the trial court found Gonzalez had not met his burden of establishing that the business records hearsay exception applied, or that Trang had used the Sun Vape invoice to refresh his recollection. The court clarified that its ruling was based exclusively on hearsay—the court was not yet dealing with the "surprise" issue.

Gonzalez's counsel asked the court if he could cure the hearsay issue by producing the Sun Vape invoice "today, while [Trang] is still a witness on the stand?" The court responded, "I don't see how, and no. I mean, I haven't even dealt with the issue of surprise or obligation to disclose."

Changing subjects, Gonzalez's counsel suggested, "I haven't explored this with [Trang], but I don't know that [the Sun Vape invoice] didn't refresh his recollection that Sun Vape was the other—" The court rejected this suggestion, explaining that although a witness can use a document to refresh his or her recollection, Trang's testimony merely relayed the hearsay content of the Sun Vape invoice.

Gonzalez's counsel then asked the trial court why it would not allow him to cure the hearsay issue "by getting [VLS's] records here to court today." The court responded, "I did not say [that], but we are not going to do it *today*." (Italics added.) The court expressed a willingness to allow Gonzalez to recall Trang the following week if he could produce the Sun Vape invoice, but the court cautioned it could not predict how it would rule regarding admissibility without first hearing Trang's actual testimony. The court also gave Gonzalez's counsel the "learning point" to "let people know" if new evidence comes up during trial.

In summarizing the scope of its ruling, the court stated it was not going to strike Trang's testimony that VLS had two retailers in San Diego County—Vapor Trail and Sun Vape. But unless Gonzalez cured the hearsay issue, the court cautioned he "won't be able to say that [VLS] didn't sell any [stainless-steel Ragnaroks] to Sun Vape." The court then took a brief recess for counsel to determine which portions of Trang's testimony the court should strike.

After the recess, Gonzalez's counsel informed the court that Trang had retrieved the Sun Vape invoice from his computer and it was present in court. The court responded that while this might allow Gonzalez to overcome the hearsay issue, Gonzalez would then have to also address the "unfair surprise" issue, which the court characterized as a "complete[] blindside[]" that "chopped off [Vapor Trail's defense] at the knees." The court invited the parties to brief the surprise issue.

Gonzalez's counsel reserved his right to recall Trang, but indicated he was unlikely to do so because he was "sensing" the court would rule against him on the surprise issue. The court clarified several times that although Vapor Trail had been surprised, the court was not "pointing fingers" or accusing Gonzalez's counsel of doing anything "nefarious." The court added, "If I have given any of the attorneys or any parties the sense that I am aggravated or annoyed, that is certainly not the case."

At the beginning of the next court day, the trial court informed the jury that the court was striking Trang's testimony that Vapor Trail was the only retailer in San Diego County that had purchased stainless-steel Ragnaroks in 2014. The court did not strike Trang's testimony that Vapor Trail and Sun Vape were VLS's only retail customers in San Diego County in 2014.

Gonzalez did not recall Trang, attempt to overcome the hearsay objection to the Sun Vape invoice, or brief the surprise issue.

B. *Relevant Legal Principles*

"Hearsay is an out-of-court statement offered to prove the truth of its content." (*Hart v. Keenan Properties, Inc.* (2020) 9 Cal.5th 442, 447, fn.

11

omitted (*Hart*); see Evid. Code, § 1200, subd. (a);[3] further undesignated statutory references are to the Evidence Code.) Unless it falls within an exception to the hearsay rule, "hearsay evidence is inadmissible." (§ 1200, subd. (b).) " 'The proponent of hearsay has to alert the court to the exception relied upon and has the burden of laying the proper foundation.' " (*Scott S. v. Superior Court* (2012) 204 Cal.App.4th 326, 342 (*Scott S.*); *Furman v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 416, 421 (*Furman*) [the proponent bears "the burden of 'producing evidence sufficient to establish the necessary foundation' for a finding that the hearsay evidence [comes] within" the cited exception].)

"If [a document] is prepared before trial and offered to prove the truth of the words it contains, it is hearsay." (*Hart*, *supra*, 9 Cal.5th at p. 447.) However, under the business records exception to the hearsay rule, "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (§ 1271, subds. (a)-(d).)

"A trial court has wide discretion in determining whether a qualified witness possesses sufficient personal knowledge of the identity and mode of

---

3       Evidence Code section 1200, subdivision (a) states: " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."

preparation of documents for purposes of the business records exception." (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 170.) " '[A]ny "qualified witness" who is knowledgeable about the documents may lay the foundation for introduction of business records—the witness need not be the custodian or the person who created the record.' " (*Ibid.*)

Even when a document containing hearsay is inadmissible under the business records exception, a witness may use it "to refresh his memory with respect to any matter about which he testifies." (§ 771, subd. (a);[4] see *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1491-1492 (*Frio*) [documents that "are not in themselves admissible in evidence" may be used to refresh recollection].) The document "has no independent evidentiary value. [Citations.] 'The primary evidence . . . is not the writing. . . . The primary evidence is the oral statement of the . . . witness.' " (*Frio*, at p. 1492.)

"A writing used to refresh recollection is not admissible in evidence at the instance of the party whose witness has used it . . . ." (*Frio, supra*, 203 Cal.App.3d at p. 1492.) "The refreshing document . . . , however, may be admitted in evidence at the behest of an adverse party." (*Ibid.*, citing § 771, subd. (b).)[5]

---

[4]　Section 771, subdivision (a) states in part: "[I]f a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken."

[5]　Section 771, subdivision (b) states: "If the writing is produced at the hearing, the adverse party may, if he chooses, inspect the writing, cross-examine the witness concerning it, and introduce in evidence such portion of it as may be pertinent to the testimony of the witness."

13

It is axiomatic that before a witness may testify based on a refreshed recollection, the witness must have an independent recollection to refresh. (See *Frio*, *supra*, 203 Cal.App.3d at p. 1495 [trial court must determine "whether the witness testifies upon a record or from his own recollection"]; *Sherrell v. Kelso* (1981) 116 Cal.App.3d Supp. 22, 32 ["the evidence (statement) is that of the witness who is convinced he has an independent memory of the incident"]; *People v. Bell* (2020) 47 Cal.App.5th 153, 194 [testimony "merely reciting [a document's] contents without personal knowledge of the facts being conveyed . . . would be conveying hearsay"].) The trial court "must determine whether the device of refreshing recollection is merely a subterfuge" for the admission of otherwise inadmissible hearsay. (*Frio*, at p. 1495.) Consequently, a prominent practice guide warns: "Watch out for attempts to have a witness testify on matters as to which he or she has *no memory* and therefore nothing to 'refresh.' " (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2019) ¶ 9:202.1, p. 9-44.)

We review the trial court's evidentiary rulings for an abuse of discretion. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078.) "It is a fundamental rule of appellate procedure that our review is limited to the record before the trial court at the time it made the challenged ruling." (See *AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021 (*AREI II*).) Further, when the trial court rules on a matter without prejudice and explains to counsel that it would reconsider the issue upon further briefing or a further showing, failure to renew the issue forfeits it on appeal. (*People v. Mills* (2010) 48 Cal.4th 158, 170 (*Mills*).)

14

## C. *Analysis*

The trial court did not abuse its discretion by striking Trang's testimony about VLS's lack of sales to Sun Vape. Gonzalez sought to introduce Trang's testimony to establish the truth of the contents of the invoice—that Sun Vape had not purchased any stainless-steel Ragnaroks (and thus Vapor Trail was the only retailer in San Diego County that had). When offered for this purpose, the contents of the invoice were hearsay. (§ 1200, subd. (a); see *Hart, supra,* 9 Cal.5th at p. 447.) As the proponent of the hearsay evidence, Gonzalez bore the burden of establishing that it fell within an exception to the hearsay rule or was properly used to refresh Trang's recollection. (*Scott S., supra,* 204 Cal.App.4th at p. 342; *Furman, supra,* 100 Cal.App.4th at p. 421.) At the time the trial court ruled, Gonzalez had not met his burden.

First, Gonzalez did not establish that the Sun Vape invoice fell within the business records hearsay exception. Neither Trang nor any other witness testified about the invoice's time or manner of preparation, whether it was prepared in the regular course of business, or whether it bore any other indicia of reliability. (§ 1271, subds. (a)-(d).) Moreover, as the trial court and Vapor Trail's counsel observed, the court could not determine whether the invoice fell within the business records exception because Gonzalez had not yet produced the invoice in court for examination.

Having thoroughly reviewed the appellate record, we reject Gonzalez's assertion that the trial court "prevent[ed] [his] counsel from making a proper record" about the invoice's admissibility. The court made clear that its ruling was based solely on hearsay grounds on the record before it at the time of the ruling. And although the court stated it would not allow Gonzalez to make a record "today"—it was already late afternoon—the court repeatedly stated

15

that its ruling did not preclude Gonzalez from attempting to clear the hearsay hurdle in the future upon a further evidentiary showing. Indeed, the court specifically stated Gonzalez was free to arrange for Trang to return later in the trial to lay the proper foundation. Gonzalez's counsel acknowledged at oral argument that he consciously chose not to recall Trang. Thus, Gonzalez has not properly preserved the issue for appeal. (*Mills*, *supra*, 48 Cal.4th at p. 170.)

Gonzalez acknowledges the trial court excluded Trang's testimony "on [the hearsay] basis only," but he suggests "what was really taking place was" that the trial court was punishing him for the late discovery and disclosure of the Sun Vape invoice. We are not persuaded. The trial court expressly stated it was not "pointing fingers" or accusing Gonzalez of doing anything "nefarious." More importantly, the court expressly stated it was not yet ruling on the surprise issue and, indeed, specifically invited the parties to brief it. Gonzalez declined.

Nor do we find significant the fact that Vapor Trail did not object to the admissibility of *its own* invoices from VLS. As Vapor Trail's counsel explained at trial, he did not object to the admissibility of Vapor Trail's invoices because "those are ours"—the Sun Vape invoice was not. The trial court properly acknowledged this distinction. By declining to object to the admissibility of its own invoices, Vapor Trail did not waive its right to object to the admissibility of other evidence.

Second, Gonzalez did not establish that Trang's challenged testimony was based on an independent recollection that had been properly refreshed by the Sun Vape invoice. To the contrary, Gonzalez's counsel expressly stated to the court that he had *not* "explored" with Trang whether the invoice refreshed his recollection. Moreover, the record shows this exploration would

16

have been futile because Trang—VLS's "I.T. and financial guy" who had no involvement with sales—demonstrated that his testimony about VLS's lack of sales to Sun Vape was merely a conduit for the hearsay contents of the Sun Vape invoice, and was not based on an independent recollection of those contents that was refreshed by reviewing the invoice. Accordingly, Trang's testimony about the contents of the Sun Vape invoice was not admissible as a refreshed recollection.

The fact that Trang had no independent recollection to be refreshed distinguishes his testimony from that of the witness in *Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022 (*Evans*), on which Gonzalez heavily relies. The witness in *Evans* reviewed a recent version of a form contract to refresh his independent recollection of a prior version of the contract. (*Id.* at pp. 1040-1041.) His testimony about the prior version was based on his independent recollection; neither version of the contract was admitted in evidence. (*Ibid.*) By contrast, Trang acknowledged his testimony was based entirely on his review of the Sun Vape invoice, not an independent memory.

Gonzalez also cites *Evans* to support the contention that unfair surprise is not a valid basis on which to preclude the use of an undisclosed document to refresh a witness's recollection at trial. (*Evans*, *supra*, 5 Cal.App.5th at pp. 1041-1042.) This aspect of *Evans* has no bearing here because the trial court never reached the surprise issue.

Because the trial court's hearsay ruling—the only ruling the court made—was correct when made, and because Gonzalez failed to avail himself of the opportunity to overcome the ruling with a further evidentiary showing, the trial court did not abuse its discretion by striking Trang's hearsay testimony about the Sun Vape invoice.

17

## II. *Judicial Bias*

Gonzalez cites several instances of conduct by the trial court that he contends constitute improper bias that deprived him of a fair trial. The cited conduct includes (1) verbally abusing Gonzalez's counsel; (2) not allowing Gonzalez to treat a nonparty witness as adverse; (3) erroneously sustaining objections that Gonzalez's counsel's questions were leading; (4) taking over Gonzalez's examination of a witness and improperly treating the witness as an expert; (5) inadvertently referring to Gonzalez as a criminal defendant; and (6) essentially directing a defense verdict by telling jurors that if they answered "no" to the first question on the special verdict form, they could be done and go home. Vapor Trail maintains Gonzalez forfeited these challenges by failing to raise them with the trial court. Alternatively, Vapor Trail argues the claims lack merit. We agree with Vapor Trail in both respects.

### A. *Forfeiture*

"As a general rule, judicial misconduct claims are not preserved for appellate review if no objections were made on those grounds at trial." (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237; see *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [defendants "did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself"]; *People v. Snow* (2003) 30 Cal.4th 43, 78 ["[B]ecause counsel failed to object to, or seek a jury admonition regarding, any of the instances of alleged judicial intemperance, the issue is waived on appeal."]; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1337-1339.) "However, a [party]'s failure to object does not preclude review 'when

18

an objection and an admonition could not cure the prejudice caused by' such misconduct, or when objecting would be futile." (*Sturm*, at p. 1237.)

It is undisputed that Gonzalez did not raise any of his claims of bias in the trial court. Thus, unless an objection and admonition would have been inadequate or futile, he has forfeited the issue on appeal.

Gonzalez contends he was excused from objecting at trial because doing so would have been futile: "There is no way this judge would diminish himself . . . and clue in the jury that maybe [Gonzalez] wasn't getting a fair shake." The record belies this claim. For example, Gonzalez's most direct claim of judicial bias—that the judge swore at Gonzalez's counsel (see part II.B.2, *post*)—undermines his assertion that objecting would have been futile. In that incident, the trial court apologized spontaneously for losing its temper outside the jury's presence: "I want to apologize to the attorneys, as well as the court reporter, for . . . my . . . unrecorded loss of temper back in the hallway. I get paid lots of money not to lose my temper, so—" One of Gonzalez's attorneys responded, "Absolutely. No problem at all." The other responded, "A wise man once told me there's no apologizing in litigation."[6] The court replied, "That's for the attorneys, not for the judges." This exchange indicates the trial court was sufficiently self-reflective that it would not have been futile for Gonzalez to object on bias grounds.

Gonzalez does not cite any other instances in the record that show it would have been futile for him to object or that an admonition would have

---

[6] This appears to refer to a comment the trial court made to Gonzalez's counsel earlier in the case when counsel apologized to the court for misnumbering a trial exhibit. When counsel apologized, the court responded, "This is trial work. You don't need to apologize." The court's response during the earlier exchange is further evidence it would not have been futile for Gonzalez to object.

19

been necessary but insufficient. Accordingly, he has forfeited his claim of judicial bias.

## B. *No Showing of Bias*

Because we have found Gonzalez's challenge forfeited, we address only briefly why we would have found the challenge fails on the merits.

### 1. *Relevant Legal Principles*

" 'Bias or prejudice consists of a "mental attitude or disposition of the judge towards [or against] a party to the litigation . . . ." ' " (*Roitz v. Coldwell Banker Residential Brokerage Co.* (1998) 62 Cal.App.4th 716, 724.) "When reviewing a charge of bias, ' . . . the litigants' necessarily partisan views should not provide the applicable frame of reference. [Citations.]' [Citation.] Potential bias and prejudice must clearly be established . . . ." (*Ibid.*) "Neither strained relations between a judge and an attorney for a party nor '[e]xpressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are . . . evidence of bias or prejudice. [Citation.]' " (*Ibid.*)

### 2. *Verbal Abuse*

Gonzalez contends the trial court exhibited bias toward him by "swearing at [his counsel] in the jury's hearing." Gonzalez has not shown bias.

The claimed incident occurred when Gonzalez's counsel requested a sidebar while the court was instructing the jury that certain of Trang's testimony was being stricken. According to a declaration filed by Gonzalez's counsel in support of his motion for judgment notwithstanding the verdict, the following then occurred:

> "This is when Judge Brown swore at [Gonzalez]'s counsel in the jury's hearing, and said[,] 'God Damnit, this jury has already been delayed two hours because of you,' as they

20

were walking into the hall behind the bench.  In the hall[,] the court was obviously angry."

The court later apologized, as we described in part II.A., *ante.*

Vapor Trail's counsel filed a declaration in the trial court disputing Gonzalez's counsel's characterization of events:

> "As an officer of the court, I feel compelled to declare that I do not believe that the jury heard or was ever aware of the court's alleged swearing at plaintiff's counsel because the alleged communication occurred at sidebar, which in this department actually occurs in the hallway between the court and chambers and is behind a closed door.

> "I do not believe that the court was swearing at plaintiff's counsel but merely expressing frustration at the fact that plaintiff's repeated attempts to elicit inadmissible hearsay had greatly slowed the trial to the detriment of the jury's precious time."

Other than the trial court's sua sponte apology to counsel out of the jury's presence, none of this incident is reflected in the reporter's transcript.

We are satisfied that the trial court's spontaneous apology indicates a lack of bias on the court's part.  Moreover, Gonzalez has not met his burden of providing us with a record sufficient to determine whether the jury, in fact, heard the court's comments such that an admonition might have been warranted.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*) ["the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifie[d] reversal of judgment"]; *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 (*Hotels Nevada*).)  Accordingly, Gonzalez has not met his burden of showing that this incident constituted improper judicial bias.

21

### 3. *Denying Adverse Witness Designation*

Gonzalez contends the trial court also exhibited bias by denying his request to treat Edgar Nieto (Gonzalez's coworker and Vapor Trail's customer) as an adverse witness. We disagree.

At the beginning of Nieto's direct examination by Gonzalez's counsel, Nieto identified himself, explained who he worked for, and mentioned that he had spoken with Vapor Trail's counsel about two days earlier to coordinate his appearance at trial. Nieto said Vapor Trail's counsel provided him a copy of his deposition transcript, but they did not discuss his testimony.

Gonzalez's counsel then informed the court he would be examining Nieto pursuant to section 776, which provides that a "party . . . , *or a person identified with such a party*, may be called and examined as if under cross-examination by any adverse party . . . ." (Italics added.) The court initially responded, "All right," but when Vapor Trail's counsel objected as to the lack of foundation for section 776 treatment, the court sustained the objection. Gonzalez's counsel indicated he "may lay more of a foundation," to which the court assented. Gonzalez's counsel continued to examine Nieto, but never again requested leave to treat him as an adverse witness under section 776.

The trial court's ruling, when made, was not an abuse of discretion. (See *AREI II*, *supra*, 216 Cal.App.4th at p. 1021 ["our review is limited to the record before the trial court at the time it made the challenged ruling"].) Nor was the ruling evidence that the court was biased against Gonzalez. To the contrary, the court initially indicated it would allow Gonzalez to examine Nieto under section 776. Moreover, when Vapor Trail objected, the court permitted Gonzalez to develop further foundation for treating Nieto as an

adverse witness.  It was Gonzalez's obligation to renew his section 776 motion, which he failed to do.[7]

### 4. *Erroneously Sustaining "Leading" Objections*

Gonzalez also contends the trial court erroneously sustained several objections that his counsel's direct-examination questions were leading, which shows the trial court was "punish[ing]" Gonzalez by "leaning [its] full weight on the scales of justice for [Vapor Trail]'s benefit and to [Gonzalez]'s clear detriment."  Gonzalez is mistaken.

"A 'leading question' is a question that suggests to the witness the answer that the examining party desires."  (§ 764.)  "Questions calling for a 'yes' or 'no' answer are not leading unless they are unduly suggestive under the circumstances."  (*People v. Pearson* (2013) 56 Cal.4th 393, 426.) "[L]eading questions 'may not be asked of a witness on direct or redirect examination' except in 'special circumstances where the interests of justice otherwise require.'  Trial courts have broad discretion to decide when such special circumstances are present."  (*Ibid*.; see § 767, subd. (a).)

The trial court's rulings on Vapor Trail's "leading" objections do not indicate the court was biased.  All the examples Gonzalez cites occurred during his direct examination of Nieto and relate to whether Hartjen made specific safety disclosures to Nieto when Nieto purchased his Ragnarok from Vapor Trail, or whether Nieto discussed safety issues with Gonzalez.  Certain of the cited examples are clearly leading questions because they suggested the answers.  For example, "You never told him about resistance.  Is that

---

7     Because we review the trial court's rulings based on the record as it existed at the time of the challenged ruling, and because Gonzalez did not later renew his section 776 motion, it is of no moment whether Gonzalez may have later impeached Nieto about the extent of his relationship with Hartjen (i.e., that they were friends and not merely customer/retailer).

correct?" strongly suggested to Nieto that he never told Gonzalez about resistance principles. By contrast, the court allowed the question, "Did you ever tell him about resistance?" Similarly, the question "Never told him about Ohm's law?" strongly suggested to Nieto that he did not, in fact, tell Gonzalez about Ohm's law.

The remainder of Gonzalez's cited examples all called for "yes" or "no" answers about whether specific statements were made or specific topics were discussed. Although the yes/no dichotomy is not dispositive, the potentially leading nature of the questions is illuminated when contrasted against the open-ended follow-up questions the court allowed. For example, the court sustained as leading, "When you purchased the Ragnarok from Mr. Hartjen, did he *give you any warnings* related to the Ragnarok?" (Italics added.) But the court allowed, "When you purchased the Ragnarok from Mr. Hartjen, *did you have any discussion at all* about the product, the Ragnarok?" (Italics added.) Similarly, the court sustained as leading, "So when he was taking the device apart and putting it back together, did he ever discuss with you *any risks associated with the device*?" (Italics added.) But the court allowed, "*What did he say* when he showed you how to use it?" and "*What did he say* to you? What words did he use?" (Italics added.)

When examined in context, the trial court's rulings on the "leading" objections were either correct, or not *so* incorrect as to indicate judicial bias. (See *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. (2018) 19 Cal.App.5th 525, 541 [" ' "[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review" ' "].)

### 5. *Improperly Taking-over Examination*

Gonzalez further contends the trial court exhibited bias by "hijacking" Gonzalez's examination of Nieto and "unfairly burnish[ing] Nieto's testimony [by] treat[ing] a relatively new member of the vaping society as if he were some credentialed expert." Specifically, Gonzalez complains that the trial court interrupted his redirect examination of Nieto to ask technical questions about how vaping devices deliver nicotine. The court's conduct does not indicate bias.

First, " 'it is not merely the right but the duty of a trial judge to see that the evidence is fully developed before the trier of fact and to assure that [any] ambiguities and conflicts in the evidence are resolved insofar as possible.' " (*Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 523; see *Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034, 1045 ["a trial court may ask questions of witnesses to elicit material facts and clarify testimony to assist the jury in understanding the evidence"].) The record indicates the trial court, itself, was confused by certain of the testimony about the vaping device at issue, and the court was concerned the jury was also confused.[8] Indeed, the court repeatedly interrupted *Vapor Trail's cross-examination of Nieto* to clarify the assembly of the device at issue. Moreover, one juror also interjected with a question. The court's concern for a clear record *during both parties' examination* of Nieto does not reflect bias against Gonzalez.

---

[8] The trial court's following statements illustrate its concern: (1) "Maybe the jury is as confused—maybe not—as I am"; (2) "And I'm sorry, ladies and gentlemen. I was confused, and I don't know if you were or not, but—"; (3) "Like I said, the jury probably understands it; I do not."; (4) "Well, that's fine [that experts will be explaining the device], but speaking for myself, I have no idea how to—"; (5) "I understand [that experts will be testifying], but I don't want to be in suspense for three days."

Second, Gonzalez, too, asked Nieto technical questions about vaping. For example, Gonzalez's counsel asked Nieto on direct examination "[to] explain how an atomizer works," "how do you build a coil," "[w]hat is the coil made of," "[d]oes the wire come in multiple gauges," "[w]hat is the range of gauges you can buy a wire in," and "why did you understand you had to check the resistance?" In this context, the trial court's later questioning of Nieto about nicotine delivery did not "unfairly burnish[]" Nieto as an expert witness, and did not constitute bias.

### 6. *Referring to Gonzalez as a Criminal Defendant*

Gonzalez argues the trial court exhibited "unconscious bias" against him by inadvertently referring to him as a criminal defendant. We are not persuaded.

During Nieto's testimony, the court dismissed the jury for the morning recess. Then, outside the jury's presence, the court stated: "We remain on the record on Gonzalez versus The Vapor Trail. I almost said 'People versus Gonzalez' again, but—we remain on the record on Gonzalez versus The Vapor Trail."

We disagree with Gonzalez that this amounted to anything "more than the inadvertent slip of the tongue . . . by a judge transitioning from the criminal courts to a civil assignment . . . who admittedly had not conducted a civil trial in eight years prior." Moreover, the statement occurred outside the jury's presence. Finally, Gonzalez acknowledges that, "in and of itself, this would not be the basis for reversal . . . ." Because we reject Gonzalez's other claims of bias, his concession regarding this claim is dispositive.

### 7. *Directing a Verdict*

Gonzalez claims the trial court exhibited bias by essentially directing a defense verdict while instructing the jury how to complete the special verdict

26

form.  Gonzalez bases this claim on the following narrative from his counsel's declaration in support of his new trial motion:

> "Prior to the reading of the Jury Instructions, there was a discussion between the Court and litigants as to whether the court reporter needed to transcribe the actual reading of the jury instructions, as these instructions would themselves be part of the record.  It was agree[d] that it was unnecessary to transcribe the actual words in the jury instructions and the court reporter was so instructed.  [¶]

> "As the Court got [to] the end of the instructions, he held up the multi-paged Special Verdict form to the jury and said, 'I am now going to go off script for a while.'  After saying those words, which the court reporter failed to start recording, the Court said that 'these Special Verdicts are really complicated,' and that they 'should not start at the damages first,' that 'they should start at the first questions which says, 'did Defendants sell the vaporizer to Plaintiff.'  The Court then added that 'If nine of you agree, then the form says you skip to the last page and sign it and you are done.'  It was approximately 4:30 p.m.  These 'off scripted remarks' then prompted a lengthy back and forth question and answer session with the judge.  One of the first questions from the man who would become foreman was, 'Can we go back right now and vote so we don't have to do this tomorrow?' "

The fate of this challenge is dictated by this phrase from the quoted passage:  "the court reporter failed to start recording."  " 'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against [the] appellant. [Citations.]  This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error. [Citations.]' " (*Hotels Nevada*, *supra*, 203 Cal.App.4th at p. 348; *Jameson*, *supra*, 5 Cal.5th at pp. 608-609.)  A challenge based on the

27

trial court's instructions to the jury must be supported by a reporter's transcript or an agreed or settled statement of the challenged instruction. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [claim of instructional error rejected where "the reporter's transcript fails to reflect the content of the challenged special instructions"]; Cal. Rules of Court, rule 8.120(b) ["If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following: [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137."].)

Gonzalez has not provided a reporter's transcript or an agreed or settled statement of the challenged oral proceedings. Although the lack of a reporter's transcript is understandable in light of the parties' stipulation that jury instructions need not be reported, the stipulation did not excuse Gonzalez from providing a settled or agreed statement regarding those proceedings. Because Gonzalez has not provided a sufficient record, we are unable to review his claim and it must be resolved against him.

### III. *Substantial Evidence*

For his final challenge, Gonzalez contends the record contains insufficient evidence to support the jury's finding that Vapor Trail did not sell the device to Gonzalez. This challenge fails for several reasons.

Most fundamentally, the challenge fails because it is based on a misunderstanding of the parties' respective burdens at trial. As the plaintiff, Gonzalez bore the burden of proving that Vapor Trail sold him the allegedly defective device. (See § 500; *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 362; *Garcia v. Joseph Vince Co.* (1978) 84 Cal.App.3d 868, 874.) Absent a

28

conclusively binding admission by Vapor Trail that it sold the offending device,[9] the jury was free to disregard the evidence Gonzalez produced on that point. In this vein, the jury's finding that Vapor Trail did not sell the product to Gonzalez amounts more to a failure of proof by Gonzalez than an affirmative defense Vapor Trail was required to establish with substantial evidence.

In any event, the verdict is supported by substantial evidence. "When applying the substantial evidence test, 'the power of the appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding.' [Citation.] Evidence is 'substantial' for purposes of this standard of review if it is of ponderable legal significance, reasonable in nature, credible, and of solid value. [Citation.] The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence. [Citation.] Furthermore, a [trier of fact]'s credibility findings cannot be reversed on appeal unless that testimony is incredible on its face or inherently improbable. [Citations.] One practice guide has described the test for inherent improbability by stating that 'reviewing courts have uniformly demanded more than mere improbability to warrant reversal: The evidence must be physically impossible or obviously false without resorting to inference or deduction.' [Citation.]" (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 200-201 (*Consolidated Irrigation*).)

---

9       For example, " '[m]atters that are admitted or deemed admitted through [request for admissions] discovery devices are conclusively established in the litigation and are not subject to being contested through contradictory evidence.' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 30; see Code Civ. Proc., § 2033.410.)

Under this standard, substantial evidence supports the jury's finding that Vapor Trail did not sell the device to Gonzalez. First, Hartjen expressly denied that Vapor Trail sold the device. He based this conclusion on his own observations, discussions with employees, and a review of business records. Second, a forensic accountant reviewed the parties' discovery responses, deposition testimony, and Vapor Trail's bookkeeping records, and concluded Vapor Trail did not sell the device to Gonzalez. Finally, there was abundant evidence (testimony by Nieto, Hartjen, and the accountant) that the device contained a wire of a thickness not sold by Vapor Trail, which undermined Gonzalez's claim that he bought vaping supplies only at Vapor Trail, and supported a finding that he bought the device elsewhere. This evidence is more than sufficient to support the verdict.

Gonzalez argues this evidence is insufficient because Hartjen's and Nieto's testimonies were impeached in several respects at trial, and the bookkeeping records on which Hartjen and the forensic accountant relied were unreliable. But under the substantial evidence standard, we do not reweigh credibility, and none of the impeachment or evidentiary shortcomings rendered the evidence " 'physically impossible or obviously false without resorting to inference or deduction.' " (*Consolidated Irrigation*, *supra*, 204 Cal.App.4th at p. 201.) Moreover, we find it revealing that the trial court, which saw all the witnesses testify firsthand, denied Gonzalez's new trial motion based on the same claims of impeachment Gonzalez cites here.

Gonzalez also recites the abundant evidence that would have allowed the jury to find that Vapor Trail did, in fact, sell him the device. This is of no moment under the substantial evidence standard. "So long as there is 'substantial evidence' to support a jury award, the appellate court must

30

affirm, even if the reviewing court would have ruled differently had it presided over the proceedings below, and even if other substantial evidence would have supported a different result." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1208.)

DISPOSITION

The judgment is affirmed.  Gonzalez to pay Vapor Trail's costs on appeal.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


GUERRERO, J.