*Supp. 26 Opinion
FITCH, J.
Statement of Issues
Four issues are presented to us on this appeal.
First, was it error to allow portions of a vehicle accident report to be read into evidence by a police officer? The question of whether or not this would constitute prejudicial error is one we do not reach, because we have determined that the introduction of the evidence was not error in the first instance.[1]
Second, did the trial court commit prejudicial error by admitting, over plaintiiFs objection, a hearsay statement of the witness Lillian Pearl?
Third, did the trial court commit prejudicial error by refusing to allow the plaintiff to testify concerning a statement made by the defendant, Christine Kelso, at the scene of the accident?
Fourth, did the trial court commit prejudicial error by refusing to permit the plaintiff to testify concerning a statement made by one of defendant’s teenage passengers at the scene of the accident?
Facts
Fresno City Police Officer David Ploharz (hereinafter referred to as the officer) was called as a witness by the defendant. Prior to rendering his testimony, the following testimony was presented:
*Supp. 27 “Q. Do you have any independent recollection about that accident?
“A. No, sir. Very little. Two years, almost two years.
“Q. Could you testify without your report about the accident without referring to your report?
“A. I would have to say no.”
Thereafter a foundation was laid to permit the officer to testify under the doctrine of “past recollection recorded.”[2] The officer was then permitted to testify, over plaintiffs objection, concerning a “statement” made by the witness Lillian Pearl at the time of the accident. The officer also read the prior recorded statement of the plaintiff into evidence, and read the prior recorded statement of the defendant into evidence. The plaintiff does not contend on appeal that these statements were prejudicial to her case. The prior recorded statements of both parties were consistent with their testimony in court.
The plaintiff strenuously objects, however, to the officer reading into evidence a “statement” of the witness Lillian Pearl (hereinafter referred to as the witness). The witness was a passenger in the plaintiffs vehicle and a neighbor and friend of the plaintiff. During the trial, the witness testified that the defendant drove “through the red light,” thus corroborating the plaintiffs testimony. Thereafter the officer was called to the stand by the defendant. The court permitted the officer to testify that the witness “advised me the same as” the defendant, namely, “she didn’t know if [the plaintiff] was legally in the intersection or if [the plaintiff] had run the red signal light.” This was clearly inconsistent with the witness’s prior testimony on the stand, namely, that defendant had run “through the red light.”
During cross-examination of the defendant, she was asked if she ever told any of her passengers (teenagers being transported from school) to *Supp. 28 get back in the van after the collision. The defendant replied, “No. That was not necessary [s/c] the safest place for them at the time, the van still being on the road.” Thereafter, out of the presence of the jury, the court denied the plaintiff the right to testify that she heard the following colloquy at the scene of the accident between the defendant and her teenage passenger:
Teenage Passenger. “We were going 50 miles per hour when we hit and I wish we had been going 100. We would have got a real bang out of it.”
Defendant. “Shut up and get back in the car.”
The plaintiff contends on appeal that the offered testimony should have been admitted to impeach the defendant’s prior testimony, and that the statement of the teenage passenger should have been admitted into evidence as an adoptive admission of the defendant that she was traveling at a speed of 50 miles per hour.
Use of a Traffic Accident Report as Past Recollection Recorded
The significant issue to be addressed on this appeal is whether or not it was error to allow portions of a vehicle accident report to be read into evidence as past recollection recorded. To distinguish this appeal from other reported cases, the question may be rephrased to ask whether or not the trial court was in error to permit a police officer called by a party, as a part of that party’s case in chief, to read portions of a vehicle accident report to the jury as past recollection recorded. We know of no reported case that directly or indirectly addresses this issue. Accordingly, we believe it is a case of first impression.
Section 20013 of the Vehicle Code provides in pertinent part that no “accident report shall be used as evidence in any trial, civil or criminal.” Section 1237 of the Evidence Code provides in pertinent part that where a witness lacks a full and accurate recollection of an accident, but a written document was made by the witness at the time the event occurred, “The writing may be read into evidence,” after a proper foundation is laid to assure trustworthiness. Succinctly stated, the officer “read into evidence” portions of an accident report, which report is prohibited from being “used as evidence in any trial.”
*Supp. 29 The following analysis is twofold: first, the underlying purpose of Vehicle Code section 20013 is discussed in light of recent amendments and court decisions; and second, the use of an accident report as a basis for refreshing recollection is compared with the reading of portions of a report into evidence as past recollection recorded.
1. Purpose of Section 20013 of the Vehicle Code
Both sections 20012 and 20013 were formerly one section, namely section 488 of the Vehicle Code of 1935. In the 1959 legislative session the first sentence of section 488 was enacted as section 20012, and the second sentence was enacted as section 20013. Section 20012 provides that accident reports are “confidential” and “shall be without prejudice to the individual so reporting.” Section 20013 provides that accident reports will not be used “as evidence in any trial.” There is a distinct purpose to be served by each section. On the one hand, section 20012 prohibits the distribution of the report to unauthorized persons, and on the other hand, section 20013 deals with the admissibility of the report in evidence in a trial.
It is understandable that cases published in 1960 and prior thereto, while sections 20012 and 20013 were still a part of section 488, speak of one purported legislative purpose for both sections. In Fernandez v. Di Salvo Appliance Co. (1960) 179 Cal.App.2d 240 at pages 244-245 [3 Cal.Rptr. 609], the court states: “The obvious purpose of the section [488 of the Veh. Code] is to encourage parties and witnesses to report accidents completely and truthfully.”
This case cites no authority for the foregoing proposition and, understandably, makes no distinction between restricting the disclosure of the accident report to authorized persons and the use of the accident report as evidence in a trial.
Accident reporting requirements were imposed by law as early as 1923. The restriction on the use in evidence appeared in 1927, as did the confidentiality provision. Beginning in 1935, section 488 of the Vehicle Code allowed disclosure under limited circumstances. In 1959, sections 20012 and 20013 of the Vehicle Code were created, both from former section 488. In 1965, section 20012 was amended to provide that certain contents of the reports were authorized to be disclosed to “persons who may incur civil liability.” In 1969 the amendment to section 20012 provided for disclosure of the “entire contents,” not only to those incurring liability, but to their attorneys.
*Supp. 30 Although section 20012 provides that the report shall be “without prejudice to the individual so reporting,” it is doubtful that a “confidential” purpose is served today, particularly in light of the 1965 and 1969 legislation authorizing disclosure of the entire report to civil litigants and their attorneys. Certainly no driver is “encouraged” to admit his liability to an investigating officer when the written statement of that admission is available to the other driver’s attorney, and when the officer himself is permitted to relate that confession to the jury. No one would seriously contend that such a confession of liability is “without prejudice” to the declarant.
Nevertheless, the provisions of section 20012 prohibiting unauthorized persons from having access to the reports is not without its significant benefits to the public even today. Officious intermeddlers, coppers, salespersons and others seeking to profit from accidents upon our highways are effectively barred from pursuing their goals. Indeed, the present viable purpose of section 20012 is to prohibit unauthorized persons from having access to the report and thus, to a limited extent, protect the privacy of the persons involved. (State of California v. Superior Court (Thomsen) (1980) 102 Cal.App.3d 25, 29 [162 Cal.Rptr. 78].)
Section 20013 of the Vehicle Code, on the other hand, prohibits the accident report from being used “as evidence” at a trial. If the alleged purpose of section 20013 is to preserve the confidentiality of the contents of the report, that purpose is frustrated by allowing a witness to use the report to refresh his recollection; that is, “... to permit such use would be to accomplish indirectly what the statute forbade to be done directly.” (Carroll v. Beavers (1954) 126 Cal.App.2d 828 at pp. 835-836 [273 P.2d 56]. This case, decided prior to the 1965 and 1969 statutory changes, when the very presence of the accident report in the courtroom “was a betrayal of the confidence which this State required its maker to repose in the State’s agencies,” held that the report may not be used to refresh recollection.)
Although the original purpose of the 1935 legislation may have been to preserve confidentiality and encourage parties to report accidents completely, subsequent statutory amendments have bulldozed that bulwark almost over the horizon.
The availability of the entire contents of the report to litigants and their attorneys, and from there to insurance adjusters, witnesses, family *Supp. 31 and friends hardly is productive of confidentiality. Nevertheless (like § 20012) section 20013 still has a viable purpose today, and gives service to proper public policy. The Supreme Court, in the case of Robinson v. Cable (1961) 55 Cal.2d 425, at page 429 [11 Cal.Rptr. 377, 359 P.2d 929], alludes to the function served by section 20013 today. In that case the court chastised defense counsel for referring to a police officer’s diagram as an “official report” and as an “official document.”
By permitting the accident report itself to be introduced into evidence there is a danger that it would be considered by the jury as “official,” and thus be given more weight than that to which it fairly is entitled. Accident reports are printed on forms with a standard heading, insignia and title designating their “official” character. Not only is the report an “official” document per se, but it even looks “official.” And therein lies the danger.
The chance that undue weight would be given a report is not remote, considering the respect, grudging or not, that most citizens accord to so called “official” documents. We are familiar with, and impressed with, everyday “official” documents such as birth and marriage certificates, social security cards, drivers’ licenses and deeds. Even an envelope with an “official” return address to the draft board, or to the Internal Revenue Service, is sufficiently awe-inspiring to cause one’s hands to tremble a bit as the envelope is opened. No doubt, this well known respect that we have for officialdom fostered such paraphernalia as notary and corporate seals, and certificates authenticating important occasions such as graduation from school to admission to bar and bench. It is proper that section 20013 precludes the presence of an accident report in the jury room during deliberations lest this “official” report alone determine the verdict. In Carroll v. Beavers (1954) 126 Cal.App.2d 828 at page 837 [273 P.2d 56], the court twice stressed in a single paragraph that the privilege regarding an accident report “is limited to the report itself ” (Italics added.) Accordingly, we do not find that the present legislative purpose of section 20013 compels the exclusion of the contents of an accident report, but rather excludes the report itself
2. Refreshing Recollection as Compared to Past Recollection Recorded
Evidence Code section 771, subdivision (a) provides that a witness may use “a writing to refresh his memory with respect to any *Supp. 32 matter about which he testifies.” Evidence Code section 1237, subdivision (b) provides that the “writing may be read into evidence” where “the witness has insufficient present recollection to enable him to testify fully and accurately.”
In contrast to prior law (Carroll v. Beavers, supra, 126 Cal.App.2d 828, p. 836 [273 P.2d 56]) a traffic accident report properly may be used to refresh the officer’s recollection. As stated in Robinson v. Cable (1961) 55 Cal.2d 425, at page 429 [11 Cal.Rptr. 377, 359 P.2d 929]: “We can see no good reason to deprive the officer making a report from using it like any other memorandum for the purpose of refreshing his recollection, when by law it is open to the examination of interested partiese (Italics added.)
The question therefore arises as to whether or not there is any significant difference, or prejudice to opposing counsel, in permitting the report to be used to refresh recollection, as opposed to reading it into evidence as past recollection recorded, assuming the evidence is otherwise admissible.
The doctrine of past recollection recorded “was developed to allow a witness to use his previously recorded memorandum on the stand as part of his testimony, when his recollection was insufficient. Upon laying the proper foundation to assure trustworthiness, the writing could be read into evidence.” (Witkin, Cal.. Evidence (2d ed.) supra, at p. 512.)
The distinction between past recollection recorded and recollection refreshed is that under recollection refreshed the evidence (statement) is that of the witness who is convinced he has an independent memory of the incident, but only after reading the document. In the case of past recollection recorded, the evidence (statement) is that contained in the document itself. Certainly evidence admitted under the doctrine of recollection refreshed cannot be said to be inherently more trustworthy than that admitted pursuant to the doctrine of past recollection recorded. Conversely, evidence placed before the jury as past recollection recorded is not inherently more damaging to opposing counsel than that admitted as recollection refreshed — in fact, as discussed below, past recollection recorded may be less damaging and more trustworthy.
Strict requirements (not present in the doctrine of recollection refreshed) must be met before a witness can read a statement contained *Supp. 33 in a document into evidence. It must be demonstrated that the witness now recalls that the writing was made by him or under his direction, that the witness now recalls that the writing was made when the fact recorded was fresh in his memory, that the writing itself is authenticated as an accurate record, and further that he now recalls that the statement in the writing “was a true statement of such fact.” (Evid. Code, § 1237.)[3]
Typically, in the situation where past recollection is refreshed, the law enforcement officer called to testify as a witness will peruse the accident report several times prior to trial, and having convinced himself that he now remembers the incident with clarity and accuracy, will testify concerning the facts. The opposing attorney, who usually has the report before him, is permitted to cross-examine the officer concerning it. If the officer’s statements in court are in conflict with statements contained in the document, he can impeach the officer. (Evid. Code, § 771, siibd. (b).) He can ask whether or not a fact stated in the report is true (Evid. Code, § 771, subd. (b)) and even inquire as to whether or not the officer asked the witness certain questions (Carroll v. Beavers (1954) supra, 126 Cal.App.2d 828 [273 P.2d 56]). The net result is, of course, that the contents of the report, if otherwise admissible, are presented to the jury.
In the rare case, however, where the officer has either not read the report just prior to trial, or honestly believes (usually after reading the report) that he has no full and accurate memory of the incident, he is required to read into evidence the statements, otherwise admissible, directly from the written document. Again, the net result is that the contents of the report are presented to the jury. Admittedly, the evidence is presented as a part of the report, rather than as testimony of the officer. But this is a distinction without a difference. Statements read from the report are not more “official” than the officer’s testimony, because the evidence in either case originates from the same source, namely, the officer. In either case, the factual material contained in the written document is placed before the jury.
*Supp. 34 As to the revelation of the contents of the report, the lack of confidentiality is demonstrated by the fact that opposing counsel, pursuant to Evidence Code section 771, subdivision (b), has the absolute right to cross-examine the officer concerning the report. Thus, “Officer, you have testified that X is true. Isn’t it a fact that your written report of the accident states as follows: . . . [proving X is not true]?”[4]
Both Evidence Code section 771 and section 1237 permit opposing counsel to introduce the document into evidence. Nevertheless, the case of Box v. California Date Growers Assn. (1976) 57 Cal.App.3d 266 at page 270 [129 Cal.Rptr. 146], held that an accident report may not be introduced into evidence by opposing counsel, presumably on the ground that the public policy set forth in Vehicle Code section 20013 outweighs that of Evidence Code section 771. Logically, the Box v. California Date Growers Assn., supra, holding must be applied also to section 1237 of the Evidence Code.
It is rare enough indeed that an officer will admit that he has no independent recollection of an accident. (This is true though the accident occurred two years ago, was of no major significance, the officer has investigated numerous accidents since that time, and fifteen minutes prior to trial reads the accident report three times.) Such honesty is to be commended, and there is no valid reason why, under such circumstances, the contents of the officer’s accident report should not be read into evidence, provided there are safeguards sufficient to insure reliability of the evidence.
Aside from the safeguards provided by section 1237 of the Evidence Code (four of them), there is an additional safeguard. Under the doctrine of recollection refreshed, the officer is free to wander far astray from the previously recorded facts he deemed relevant at the time of the accident, while his memory was fresh. For instance, the officer could testify — now that his memory is refreshed — that there was, in fact, a confession of guilt by the driver, but he simply failed to write it down due to the press of other emergency matters. The fact that the officer’s brain had subconsciously scrambled the facts of two somewhat similar accidents is difficult, if not impossible, to prove upon cross- *Supp. 35 examination, even by experienced trial counsel. On the other hand, when evidence is admitted under the doctrine of past recollection recorded, the witness is compelled to stick to the facts in the written document, that is, those facts the officer deemed relevant when his memory was fresh.
Counsel for the plaintiff cites Carroll v. Beavers (1954) supra, 126 Cal.App.2d 828 [273 P.2d 56], in support of his appeal. This case held that it was error to sustain an objection to a question asked of the officer concerning an interview with the defendant. True, the court did hold that it was proper to preclude the officer from refreshing his recollection from the report, but this case was decided prior to substantial statutory changes, and is no longer the law. Also, Robinson v. Cable (1961) supra, 55 Cal.2d 425 [11 Cal.Rptr. 377, 359 P.2d 929], is of no help to the plaintiff. In that case the court held that a diagram and enlarged photo of the accident made by the officers at the scene of the accident was properly admitted to “illustrate their testimony.” This case also is authority for the rule that an officer may refresh his recollection from his traffic accident report. Similarly, Kramer v. Barnes (1963) 212 Cal.App.2d 440, 446 [27 Cal.Rptr. 895] is of no help because it deals with the sufficiency of an affidavit of a police officer used in support of a motion for summary judgment. There it was held that the officer’s affidavit did not demonstrate he had personal knowledge of the facts, and thus the officer’s affidavit was faulty. Similarly, State of California v. Superior Court (Thomsen) (1980) supra, 102 Cal.App.3d 25 [162 Cal.Rptr. 78], cited by the plaintiff, does not help. The case holds that Vehicle Code section 20012 does not protect traffic accident reports against discovery where the complaint alleges that a highway was in a dangerous condition.
Thus, we conclude that the purpose of section 20013 of the Vehicle Code is not served by excluding the contents of a traffic accident report from evidence as past recollection recorded, but by excluding the report itself; and further conclude that there is no inherent prejudice or disadvantage to opposing counsel resulting from the reading into evidence of witnesses’ statements contained in a traffic accident report, (lc) Therefore, the trial court did not commit error in allowing portions of the vehicle accident report to be read into evidence as past recollection recorded.
*Supp. 36 Remaining Issues
The statement of the witness to the officer at the scene of the accident was clearly inconsistent with her testimony in court, and accordingly it was clearly admissible. (Evid. Code, § 1235.)
Although the trial court’s exclusion of the defendant Kelso’s alleged statement, “Shut up and get back in the car” was error, because it was inconsistent with the defendant’s prior testimony that she had not informed any of her passengers to get back in the car (Evid. Code, § 1220 or § 1235), nevertheless, in light of all the other evidence, it cannot be construed to be prejudicial or even significant.
The trial court’s refusal to admit the colloquy between the defendant and her teenage passenger, under the theory of an adoptive admission (Evid. Code, § 1221) was not error. It is reasonable to infer that one in the position of the defendant, who not only was involved in an accident, but also was responsible for the safety of the children, would have been provoked by the smart aleck remark. Her response was reasonable, if not appropriate, and is reasonably interpreted as disciplining the boy. The circumstances were not such as would naturally call for a denial of the child’s comment. Accordingly, it cannot be said, as a matter of law, there was sufficient evidence to sustain a finding of the defendant’s adoption of the teenager’s statement that the speed of the van was 50 miles per hour. Moreover, there was no showing whatsoever that the child’s wisecrack concerning the speed was based on his own perception of the facts. (Evid. Code, § 800, subd. (a).)
Accordingly, we find no prejudicial error in the trial court’s rulings and affirm the judgment.
Kessler, P. J., and Caeton, J., concurred.

We are, however, convinced that if, in fact, it was error to permit the police officer to testify concerning Lillian Pearl’s “statement” given at the scene of the accident, this would constitute prejudicial error. Lillian Pearl’s “statement” at the scene of the accident was inconsistent with her testimony on the stand. As a result, and at the very least, it demonstrated that her testimony lacked credibility. Of substantially greater importance, her “statement” at the scene of the accident is in direct conflict with the plaintiiFs testimony, and, if believed by the jury, would constitute a single, justifiable ground upon which the jury could reach a verdict in favor of the defendants. The fact that Lillian Pearl was a passenger in the plaintiiFs vehicle, and was a neighbor and friend of the plaintiff substantially adds to the prejudice. Accordingly, we hold that if it was error to place this evidence before the jury it would have been so prejudicial as to constitute a miscarriage of justice and a result more favorable to the plaintiff would have been reached. (Cal. Const., art. VI, § 13; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 318, p. 4297.)

Although this doctrine is commonly known as “past recollection recorded” (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1171 at p. 1084), Evidence Code section 1237 refers only to recorded statements previously made by a witness. It appears, however, that the admission of factual information is proper under this doctrine. (Anderson v. Souza (1952) 38 Cal.2d 825, 832 [243 P.2d 497].) The plaintiff made no objection at the trial to lack of a proper foundation, nor to the fact that the officer testified concerning details of the accident. These objections, similarly, are not "raised on appeal. Accordingly, we do not address these issues.

It may appear somewhat anomalous that a witness has present recall sufficient to meet the code’s stringent requirements (especially the requirement that he now recall that the past written statement was a true report of the facts upon which the statement was based) but yet has insufficient present recollection to testify fully and accurately about facts upon which the statement is based. Nevertheless, trial judges throughout the state are faced with the necessity of making this interesting distinction, if any, on an almost daily basis.

Even though section 1237 of the Evidence Code does not specifically grant opposing counsel the right to cross-examine the officer concerning the report, we know of no case or valid reason denying such right.