Filed 12/8/20  Soulliere v. Suzuki Motor Corp. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THOMAS JOSEPH SOULLIERE, | |
| Plaintiff and Respondent, | G057266 (Consol. w/ G057965) |
| v. | (Super. Ct. No. 30-2015-00790644) |
| SUZUKI MOTOR CORPORATION, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge.  Reversed and remanded with directions.

Becherer, Kannett and Schweitzer, Lori A. Schweitzer; Morgan, Lewis & Bockius, Robert A. Brundage and C. Cecilia Wang, for Defendant and Appellant.

The Simon Law Group, Robert T. Simon, Brooke L. Bove; Houston Law of California and T. Gabe Houston, for Plaintiff and Respondent.

\*                  \*                  \*

Ten days after purchasing a used Suzuki motorcycle, respondent Thomas Soulliere was involved in a traffic accident with an SUV. Soulliere claimed his front brake did not respond when he tried to avoid the collision. He sued appellant Suzuki Motor Corporation, alleging the motorcycle's front brake was defective.

Over Suzuki's objections, the trial court permitted Soulliere to introduce evidence that Suzuki had recalled his type of motorcycle to remedy a front brake master cylinder (FBMC) condition that could result in reducing or slowing the Suzuki's braking response. At trial, however, Soulliere never claimed the recall condition caused the accident. Moreover, his testimony about an abrupt loss in braking power was inconsistent with the recall condition. Still, the majority of the evidence and argument at trial related to the recall and the recall condition.

The jury heard testimony that after the accident but before suing Suzuki, Soulliere took his motorcycle to a repair shop. Following recall protocols, the shop removed and destroyed the FBMC in his motorcycle. Suzuki did not know about Soulliere's accident when the repair shop removed the FBMC because Soulliere had not yet filed his lawsuit. Based on this evidence, the trial court gave a willful suppression instruction, which permitted the jury to find Suzuki had destroyed evidence intentionally and to draw adverse inferences against Suzuki.

A key issue at trial was whether the motorcycle's front wheel had locked before the collision, which would indicate the front brake worked. The investigating officer's traffic accident report stated that two days after the accident Soulliere told the officer both his front and rear wheels locked when he applied the brakes. The officer, however, had no independent recollection of the crash or Soulliere's statements and only could rely on the content of his report. Soulliere filed a pretrial motion to exclude the accident report, which the trial court granted. Mid-trial, Suzuki sought to have the officer read the contents of the accident report into the record as a past recollection recorded (Evid. Code, § 1237). The trial court ruled Suzuki could not rely on that hearsay

exception because Suzuki initially had sought to use the accident report solely to refresh the officer's recollection under a different Evidence Code provision. The court believed Suzuki's reliance on this hearsay exception without advising Soulliere before the Evidence Code section 402 hearing was prejudicial to Soulliere. For this reason the court also prohibited Suzuki from using the past recollection recorded hearsay exception at trial and therefore would not allow Suzuki to call the officer to testify. Nor would the court permit Suzuki to cross-examine Soulliere's expert witness about Soulliere's statement to the investigating officer.

In the liability phase of the trial, after two days of deliberations, the jury returned a verdict against Suzuki on all the product liability counts. In a 10-2 vote, the jury found the motorcycle had a defect, and in a 9-3 vote, the jury found the defect caused the accident. In a 10-2 vote, the jury found Soulliere was not comparatively negligent and also in a 10-2 vote, the jury found that Suzuki engaged in conduct with oppression, malice, or fraud. The jury awarded more than $1.4 million in compensatory damages. In the punitive damages phase, which focused on the recall, the jury twice reported it was deadlocked but eventually, after a 9-3 vote, awarded over $6 million in punitive damages.

Suzuki moved for a directed verdict on the ground Soulliere failed to show a causal design or manufacturing defect, but the trial court denied the motion. After the jury rendered its verdict, Suzuki moved for a judgment notwithstanding the verdict (JNOV) on the same ground. The trial court denied the JNOV motion, and Suzuki appealed.

Suzuki contends the trial court erred in denying the JNOV motion. As discussed further below, we conditionally reverse the trial court's denial of Suzuki's motion for JNOV, but we will remand the matter to allow Soulliere the opportunity to make an offer of proof on whether he could produce admissible expert evidence of a causal defect.

3

Assuming Soulliere can fill the gap in his evidence with admissible expert testimony, Suzuki contends we must reverse the judgment because (1) the trial court erred in denying its motion to exclude the recall evidence; (2) the court erred in giving the willful suppression instruction; and (3) the court erred in excluding the contents of the traffic accident report. We agree. Given the lengthy deliberations and the non-unanimous verdict, we conclude it is reasonably probable the jury would have returned a different verdict absent the multiple errors. Accordingly, we reverse the judgment and remand the matter for further proceedings.[1]

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint and Jury Verdict*

Soulliere filed his complaint against Suzuki on June 1, 2015. He later filed a First Amended Complaint (FAC), asserting causes of action for product liability, strict product liability, negligence, and breach of the implied warranty. The FAC alleged Soulliere purchased a 2009 Suzuki GSX-R 600 motorcycle from Bert's Mega Mall on May 28, 2013. Ten days later on June 8, 2013, Soulliere was riding the motorcycle when another vehicle failed to yield the right of way. Soulliere attempted to engage the front brake but the "brakes did not respond appropriately to control inputs," and he suffered severe injuries when his motorcycle collided with the vehicle. The FAC sought compensatory and punitive damages, costs, and prejudgment interest.

After two days of deliberations, the jury found in favor of Soulliere on his strict product liability claims. On the design defect claim, 10 jurors found the motorcycle failed to perform as safely as an ordinary consumer would have expected when used or

---

[1] After Suzuki appealed the original judgment on January 25, 2019, the trial court purported to enter an amended judgment on February 15, 2019. The amended judgment is void and must be vacated because Suzuki's notice of appeal divested the trial court of jurisdiction to amend the judgment. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189, 196-197.)

4

misused, with Juror Nos. 3 and 4 disagreeing. Nine jurors found the design defect caused the accident, with Juror Nos. 3, 4 and 11 disagreeing. On the manufacturing defect claim, 10 jurors found the motorcycle contained a manufacturing defect when it left Suzuki's possession, with Juror Nos. 1 and 3 disagreeing. Nine jurors found the manufacturing defect caused the accident, with Juror Nos. 1, 3, and 4 disagreeing. Eleven jurors found Suzuki failed to adequately warn consumers of the potential risks of the motorcycle, with Juror No. 3 disagreeing. Ten jurors found Soulliere was not negligent, with Juror Nos. 1 and 4 disagreeing. Ten jurors also found that Suzuki had engaged in conduct with malice, oppression or fraud, with Juror Nos. 1 and 3 disagreeing.

The jury unanimously found Soulliere suffered $200,000 in lost future earnings, $658,799 in future medical expenses, and $900,000 in noneconomic loss. Following a 9-3 vote, the jury awarded punitive damages in the amount of $6,083,676.

B. *The Accident*

The jury heard from two accident reconstructionists. Plaintiff's reconstructionist, Joseph Yates, acknowledged that the most common motorcycle accident involves another vehicle violating the right-of-way of the motorcycle rider and the motorcycle rider's attempt to avoid the collision, as was the case here. He further acknowledged that "accidents happen all the time with properly functioning brakes."

Yates opined the skid marks left at the accident scene were inconsistent with a fully-functional front brake. According to Yates, if the front brake had locked, the rear tire would have lifted off the ground, but the rear-tire skid mark was dark and wide, meaning the rear tire continued to hold the road. Suzuki's accident reconstructionist, Todd Hoover, disagreed. Hoover testified the physical evidence of skid marks and an abrasion on the front tire meant the front brake worked and locked the front wheel. Hoover also testified that two tire skid marks showed both the front and rear wheels were locked before the collision.

5

Soulliere testified he had ridden dirt bikes and street bikes his "whole life," but the GSX-R 600 was the first street bike he owned. He bought it used from Bert's Mega Mall on May 28, 2013. Before he purchased the bike, the dealer performed a complete inspection. Soulliere rode the bike every day for the first 10 days after buying it, and had no brake problems. His brother also rode the bike during that period, and experienced no brake problems.

The accident happened around 9:30 a.m., on June 8, 2013, the 10th day after Soulliere purchased the motorcycle. Earlier that morning, Soulliere had checked the brakes and rode a few blocks using his brakes several times without any problem. The accident occurred when an SUV pulled out in front of him and abruptly stopped. Soulliere pulled his front brake lever to slow down but "[n]othing happened." "Literally nothing." He pushed the rear brake, which slowed the motorcycle, but the rear brake locked, the motorcycle tipped over, and slid into the SUV.

After the accident, Soulliere was hospitalized for nine days, undergoing several surgeries. Six weeks after the accident, Doug Vanderpool, the father of Soulliere's friend, retrieved Soulliere's motorcycle from the tow yard. Vanderpool had the motorcycle taken to a Suzuki dealership, Southland Cycle, for repair. The dealership performed a complete inspection of the vehicle and found nothing wrong with the brakes. It repaired cosmetic damage and returned the vehicle to Vanderpool. After storing the motorcycle in his garage for one to two weeks, Vanderpool rode it on the freeway and then to Soulliere's residence. He experienced no braking problems on the 60- to 70-mile trip.

Soulliere's human factors expert, Joellen Gill, opined about the steps a reasonable motorcycle rider would take when responding to a stopped vehicle in his path. Gill testified the rider would first attempt to apply the brakes and if the front brake did not respond as expected, the rider would apply the rear brake forcefully, which could result in a loss of control and a skid. Gill stated she understood the front brake had not

6

worked as expected and she had not seen "any evidence" that Soulliere responded inappropriately. On cross-examination, Gill testified she had reviewed the deposition of the investigating officer, Officer Shaheen, and had seen nothing in his deposition testimony inconsistent with her understanding of Soulliere's actions. The trial court precluded defense counsel from questioning Gill further about Shaheen's deposition testimony. Defense counsel wanted to impeach Gill by asking her about Soulliere's statement to the officer that his front and rear brakes locked before the collision, thereby undermining Gill's claim the front brake did not work. The court precluded defense counsel's inquiry because the officer based his deposition testimony on the contents of the accident report.

C. *The Accident Report*

Soulliere filed a pretrial motion to exclude evidence, testimony, or argument relating to the traffic collision report. Soulliere relied on Vehicle Code section 20013, which generally provides that accident reports shall not be used "as evidence in any trial, civil or criminal, arising out of an accident." Suzuki opposed the motion, noting the information in the report was admissible, although the report itself was inadmissible, citing *Sherrell v. Kelso* (1981) 116 Cal.App.3d Supp. 22, 31 (*Sherrell*).) Following a pretrial hearing, the trial court allowed Suzuki to use the accident report to refresh Officer Shaheen's recollection of statements Soulliere made to the officer, but ruled the statements in the report could not be read into the record unless Suzuki "come[s] up with authority that shows that I am wrong."

As noted above, during trial the trial court precluded Suzuki from cross-examining defense expert Gill about Shaheen's deposition testimony, which was based on the officer's accident report. Suzuki then sought to call Shaheen as a witness, and Soulliere objected. At the Evidence Code section 402 hearing on Soulliere's objection, Shaheen testified he had no independent recollection of his investigation of the crash aside from what was recorded in the report. The officer's accident report stated Soulliere

had called Shaheen two days after the accident and told the officer he had "activated his brakes and locked up the wheels which caused the motorcycle to fall to the ground . . . ." Shaheen testified he wrote this statement in the accident report, and had no reason to doubt it accurately reflected what Soulliere had said.

When Suzuki's counsel sought to admit the statement as a past recollection recorded under Evidence Code section 1237, the trial court expressed its displeasure, stating, "I asked you very specifically what was the basis for your attempt to put him on the stand, and you told me specifically it was independent recollection. . . . You have now changed tactics and you're relying on Evidence Code section 1237, which is past recollection recorded. Those are two totally different concepts. And I asked that upfront so [plaintiff's attorney] would know what to inquire about. And you misled everybody." The court revealed it had anticipated counsel would try to rely on Evidence Code section 1237, "[b]ut that's why I asked you upfront right at the beginning what's your basis . . ." Defense counsel acknowledged she did not "say pursuant to [Evidence Code section] 1237 . . . But I said refreshed recollection. I just assumed we all knew we were talking [Evidence Code section] 1237."

The court responded there were two ways to get Soulliere's statement to Shaheen into evidence: "One is an independent recollection . . . The second is to try to bring it in under [Evidence Code section] 1237. Whether Vehicle Code section 20013 would allow that or trumps the Evidence Code is an open question, and I couldn't find anything on point. [¶] But he has no independent recollection. You cannot bring this report in through the backdoor under [Evidence Code section] 1237. And you didn't tell anybody that's what you were doing. . . ." Suzuki's counsel noted Shaheen was still present and asked to continue her examination of the officer so she could lay the foundation to admit Soulliere's statement to the officer under Evidence Code section 1237. The court denied the request to resume the examination of the officer and ruled Shaheen would not be allowed to testify because he did not have an independent

8

recollection of his testimony and allowing his testimony would only be "back-dooring" into evidence the accident report.

D. *The Recall Evidence*[2]

1. Recall Condition

On October 18, 2013, Suzuki reported a defect involving the front brake master cylinder (FBMC) of various motorcycles, including all 2004-20013 GSX-R 600's, to the National Highway Traffic Safety Administration (NHTSA) under its defect reporting regulations.

Suzuki described the defect as follows: "After a long-term service life of the motorcycle without changing the brake fluid, the brake fluid can deteriorate and absorb moisture. The brake piston inside the front brake master cylinder of some motorcycles may not have uniform surface treatment. This combination of conditions can lead to corrosion of the brake piston. Corrosion of the brake piston generates gas, which may not be adequately purged from the master cylinder due to the side position location of the reservoir port. Gas remaining in the master cylinder can affect braking power by reducing proper fluid pressure transmission to the front brake. Over time, as gas continues to slowly accumulate above the reservoir port, the front brake lever may develop a 'spongy' feel and stopping distances may be extended, increasing the risk of a crash."

Suzuki proposed to correct the defect by "replac[ing] the front brake master cylinder on affected motorcycles with a redesigned part that has the reservoir port at the top location of the master cylinder to allow better purging of gas, and has improved surface treatment for the brake piston."

---

[2]    The recall evidence was voluminous, but we summarize only the evidence material to this appeal.

9

2. Suzuki Replaces the Brakes on Soulliere's Motorcycle

About one year after the accident, in June 2014, Soulliere followed his friend's suggestion and brought the motorcycle back to Southland Cycle to examine the front brake. The mechanic pulled on the brake lever and it worked. After Soulliere offered the mechanic the key to test drive the motorcycle, the mechanic looked up the brake part and learned the brake had been recalled. Southland Cycle performed the recall repair and discarded the brake.

Steven Muthig, a service operations manager at Suzuki's exclusive U.S. distributor, testified that dealers ordinarily would destroy recalled parts to prevent the parts from being resold or getting back to the general public. Muthig denied Suzuki had a policy or protocol of destroying the FBMC's.

3. Recall-related Motions

Suzuki filed a pretrial motion to exclude evidence of its voluntary recall of GSX-R FMBC's, arguing the recall condition had nothing to do with the accident based on Soulliere's own statements that a sudden and complete failure of the front brake to engage led to the accident. Suzuki urged the trial court to exclude the evidence of the voluntary recall as irrelevant, or if marginally relevant, the court should exclude it as unduly prejudicial under Evidence Code section 352. Soulliere opposed the motion, arguing the corrosion of the brake piston "was responsible for the braking defect, leading to the collision." To prove this, Soulliere relied on its expert, Jeffrey Hyatt, who opined that the corrosion condition described in the recall documents was consistent with a complete loss of braking power. Suzuki countered by arguing Hyatt lacked the expertise to provide that opinion, and also moved to exclude his testimony.

The trial court first heard argument on Suzuki's motion to exclude the recall evidence. Suzuki asserted Soulliere "would like to try the case on Suzuki's investigation of the recall," explaining that "probably 85 to 90 percent of plaintiff's case" would cover the recall evidence and "10 percent is this particular accident." In opposing

10

the motion, Soulliere claimed braking problems that led to the recall affected Soulliere's motorcycle and led to the accident. The court orally denied Suzuki's motion to exclude the recall evidence.

The trial court next heard Suzuki's motion to exclude the testimony of Hyatt, who provided the evidentiary basis for Soulliere's claim his front brakes failed because of the recall condition. After hearing the evidence concerning Hyatt's expertise, the court ruled Hyatt lacked the expertise to testify about corrosion in the FBMC. Soulliere never called Hyatt to testify at trial.

Soulliere called Muthig as the first witness in his case-in-chief, and questioned Muthig extensively about the recall. Before the court adjourned for the day, Suzuki noted it continued to object to the recall evidence. The court overruled the objection by stating that "as far as the court is concerned you have a continuing objection."

Following Soulliere's presentation of evidence, Suzuki moved for nonsuit or a directed verdict, arguing Soulliere failed to prove the recall condition caused his crash. Soulliere opposed the motion but admitted he was "*not* arguing that the recall condition existed on the subject motorcycle."[3] Soulliere also argued that if the trial court granted nonsuit or a directed verdict, he should be allowed to reopen his case-in-chief to present expert testimony on causation. Soulliere claimed his expert Hyatt could provide the necessary evidence to rebut Suzuki's argument there was no "evidence that the front brake can suddenly and completely fail because of the [defective] design." Soulliere noted the trial court previously precluded Hyatt from opining on matters based on corrosion, but claimed he could establish a sufficient foundation for the admissibility of Hyatt's opinion on causation.

The trial court denied Suzuki's motion for nonsuit or a directed verdict.

---

[3] In closing argument, Soulliere's counsel also stated: "I'm not here to prove to you that the recall condition was on this bike. That's not what my case is about."

### 4. Willful Suppression of Evidence

Before trial, Soulliere sought sanctions for Suzuki's alleged spoliation of evidence arising from its decision to destroy all FBMC's removed during the recall, arguing that Suzuki "should not be able to come in here and benefit from [its] destruction of evidence that would be dispositive or could be dispositive on this issue." Suzuki opposed the motion, arguing it had no notice of a pending or potential claim by Soulliere. The trial court denied the sanctions motion.

Over Suzuki's objections, the jury was instructed that it "may consider whether one party intentionally concealed or destroyed evidence," and "[i]f you decide that a party did so, you may decide that the evidence would have been unfavorable to that party." The basis for the instruction was Suzuki's failure to retain the recalled FBMC's despite knowledge there might be litigation over the recall.

After the jury rendered its verdict, Suzuki filed a new trial motion, arguing the trial court erred in allowing Soulliere to introduce the recall evidence. Suzuki noted the recall evidence in Soulliere's case-in-chief took four and a half days of testimony and 34 documents, while evidence about the accident took only two days of testimony and three exhibits. The court denied the motion.

## II

### DISCUSSION

#### A. *Suzuki's JNOV Motion*

Suzuki contends the trial court erred in denying its JNOV motion because no substantial evidence supported the jury's finding a design or manufacturing defect was a substantial factor in causing Soulliere's injuries. Code of Civil Procedure section 629 provides in part: "The court . . . shall render judgment in favor of the aggrieved party notwithstanding the verdict when a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made . . . ." (See also *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68, [a trial court must render JNOV

12

whenever a motion for directed verdict for the aggrieved party should have been granted].)

Here, Suzuki moved for nonsuit or directed verdict before moving for a JNOV. Accordingly, we review the trial court's prior rulings and its ruling on the JNOV. (See also Code Civ. Proc., § 906 ["the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had"].)

As this court has explained, while a motion for nonsuit, directed verdict or JNOV are "made at different times, the three motions are analytically the same and governed by the same rules." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750.) "'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.' [Citation.]" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.)

"A product liability case must be based on substantial evidence establishing both the defect and causation (a substantial probability that the design defect, and not something else, caused the plaintiff's injury) and where, as here, the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." (*Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363, 1373 (*Stephen*).)

13

Without a causal defect, Soulliere cannot make a prima facie case of product liability. In addition, a manufacturer has no duty to warn consumers about a nonexistent defect.

On appeal, Soulliere argues the motorcycle was defective because it did not slow down and stop when Soulliere applied the brakes. At trial, however, Soulliere testified that hours before the accident he drove the motorcycle and used the brakes several times without problem. Weeks after the accident, a mechanic tested the brakes and found no problem. Later, Vanderpool drove the motorcycle 60 to 70 miles without any brake problems. Soulliere offered no evidence explaining why the brakes were working before and after the accident, but not immediately before the accident. The accident alone does not constitute substantial evidence of causation because as Soulliere's accident reconstructionist Yates acknowledged, "[a]ccidents happen all the time with properly functioning brakes."

In closing arguments, Soulliere's trial counsel argued the side port on the FBMC was a design defect and the insufficient coating of the brake piston was a manufacturing defect. The evidence showed these two defects together with improper maintenance and the lapse of time can result in a gradual loss of braking power. Suzuki recalled the motorcycle because of this possible condition. Because the FBMC was destroyed, there was no physical evidence the motorcycle suffered from the recall condition. More important, Soulliere never argued his motorcycle had the recall condition. Indeed, in opposing Suzuki's motion for nonsuit or directed verdict, Soulliere expressly stated he was "*not* arguing that the recall condition existed on the subject motorcycle." Soulliere underscored this point when he testified there was a sudden and complete failure of braking power before the accident, not weak braking power. Thus, there was no substantial evidence the motorcycle was defective because it suffered from the recall condition.

Soulliere argues the side port design and insufficient coating of the brake piston (the recall condition) also could result in complete brake failure. This theory is

14

beyond the common experience of both judges and jurors and thus requires expert evidence. Soulliere initially proposed to call Hyatt to provide the required expert evidence, but after the trial court ruled Hyatt lacked expertise to opine on chemical corrosion, Soulliere did not call Hyatt to testify the recall condition could cause a complete brake failure. "It follows that [Soulliere's] inability to present expert testimony was fatal to [his] product liability and negligence claims, and that nonsuit was proper." (*Stephen*, *supra*, 34 Cal.App.4th at pp. 1373-1374.)

Although nonsuit was proper based on the lack of expert testimony, in his opposition to Suzuki's nonsuit motion, Soulliere requested the opportunity to reopen his case-in-chief to provide the required expert testimony. The trial court never ruled on the request because it denied the nonsuit motion. "After a motion for nonsuit is made in a jury trial, it is the trial court's duty, if so requested, to permit the plaintiff to reopen its case and introduce further evidence, since one of the objectives served by such a motion is to point out the oversights and defects in the plaintiff's proof so he or she may supply, if possible, the specified deficiencies. It is error to refuse this privilege and, after such refusal, to grant a motion for nonsuit." (*S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 538.) Thus, we cannot order the trial court to enter nonsuit on remand because Soulliere lacked the opportunity to make an offer of proof that might show Hyatt could testify and fill in the causation gap. (*Id.* at p. 539 [trial court did not err in denying motion to reopen following the grant of a nonsuit motion when the additional evidence is irrelevant or insufficient as a matter of law].)[4]

For similar reasons, we cannot order the trial court to enter a directed verdict in Suzuki's favor. Code of Civil Procedure section 630 presupposes the directed verdict is sought on an issue that was presented at trial and on which the opposing party

[4] In arguing for an opportunity to reopen his case, Soulliere represented he would call Hyatt and claimed Hyatt could establish causation. Consequently, Soulliere on remand may call only Hyatt to fill in the causation gap in the evidence.

15

had an opportunity to present evidence. (*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1051. As noted, Soulliere requested the opportunity to present expert evidence, but the trial court never ruled on the request. (See *Sanchez v. Bay General Hospital* (1981) 116 Cal.App.3d 776, 793 [in ruling on a directed verdict motion, trial court has discretion to reopen for further evidence upon showing of good cause]; cf. *Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1162-1163 [reversing trial court's denial of motion for directed verdict and JNOV motion based on insufficiency of the evidence because, among other grounds, in response to defendant's motion for directed verdict, plaintiff never requested the opportunity to present additional evidence to meet the claimed insufficiency].) On the record before us, we cannot determine as a matter of law whether the proffered expert testimony is admissible. Consequently, the trial court must determine whether the proffered evidence is admissible and provides a substantial basis for the jury's determination the motorcycle had a defect that was a substantial factor in causing Soulliere's injuries. Suzuki, however, is entitled to a directed verdict if the proffered evidence lacks the proper foundation or is insufficient as a matter of law.

For the same reasons, we cannot order the trial court to enter judgment in Suzuki's favor without providing Soulliere an opportunity to present additional expert evidence on a causal defect. (See Code Civ. Proc., § 629 [trial court's power to grant JNOV identical to power to grant directed verdict].) Accordingly, we will remand the matter for the trial court to hold an evidentiary hearing on the admissibility of testimony from Hyatt that the recall condition can lead to complete brake failure. If the trial court concludes the proffered evidence is inadmissible or insufficient as a matter of law, it shall enter a judgment for Suzuki on all claims.

B. *The Judgment Must Be Reversed*

Suzuki contends we must reverse the judgment because the trial court prejudicially erred in admitting the recall evidence, giving the willful-suppression

16

instruction, and precluding Shaheen from testifying about the contents of his accident report. Suzuki is correct. Assuming Soulliere presents admissible evidence from Hyatt that shows causation, the cumulative errors described below require us to reverse the judgment.

1. *The Recall Evidence*

Suzuki contends the trial court erred in rejecting its Evidence Code section 352 objection to the recall evidence because it was unduly prejudicial, confused the issues, and likely misled the jury. Suzuki asserts these factors outweighed the slight probative value of this evidence. We agree.

Evidence Code section 352 (section 352) allows a trial court to exclude evidence "when its probative value is substantially outweighed by the likelihood that its admission will unduly consume time or create a substantial danger of unduly prejudicing, confusing or misleading the jury." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008.) Prejudice is demonstrated when the evidence uniquely tends to evoke an emotional bias against a defendant with little effect on the issues. (*Ibid*.) "In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction." (*Id*. at p. 1009) We review the trial court's ruling under section 352 for an abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 663.)

There was evidence the recall condition produced a gradual loss of braking power, caused by an improperly coated braking piston and the failure to regularly change the brake fluid over a two-year period. The older brake fluid eventually would corrode the piston and create a gas build-up, which resulted in a lethargic brake response.

In its pretrial motion to exclude the recall evidence, Suzuki asserted the evidence was unduly prejudicial, would confuse or mislead the jury, and consume an inordinate amount of time. Suzuki informed the trial court that evidence about the recall

investigation was extensive, delving into both internal and external communication within Suzuki, its distributors, and communications with NHTSA, dealers, and registered owners. Suzuki claimed the recall evidence would constitute 85 to 90 percent of Soulliere's case.

In opposing this motion, Soulliere claimed Hyatt would testify the recall condition was consistent with a complete loss of braking power and therefore led to Soulliere's collision. Suzuki moved to exclude Hyatt's testimony because he lacked the expertise to give this opinion.

The sequence in which the trial court heard these pretrial motions played a significant role in the court's rulings. The court first heard Suzuki's motion to exclude the recall evidence under section 352 before determining whether Soulliere could lay a proper foundation for admitting Hyatt's testimony that the recall condition was a substantial factor causing Soulliere's accident. After hearing argument, the court issued its ruling denying the motion to exclude the recall evidence.

At this point the trial court's ruling was sound. The court reasonably could rely on Soulliere's representation that Hyatt's testimony at trial could show the recall condition existed on Soulliere's motorcycle and was a substantial factor in causing the collision. The probative value of Hyatt's anticipated testimony linking the cause of the accident to the recall condition on Soulliere's motorcycle would have outweighed any potential prejudice to Suzuki.

After orally issuing its ruling on Suzuki's motion to exclude the recall evidence, the trial court heard Suzuki's motion challenging Hyatt's expertise. After hearing Soulliere's attempt to lay the foundation for Hyatt's testimony, the court ruled Hyatt lacked the expertise to testify about the corrosive condition and whether it existed on Soulliere's motorcycle. This ruling, however, did not prompt the court to revisit its earlier section 352 ruling allowing Soulliere to introduce the recall evidence. Instead, the

18

court issued a written minute order reaffirming its oral pretrial rulings.[5] And the court again overruled Suzuki's renewed section 352 objection during Soulliere's extensive examination of Muthig about the recall condition, noting that Suzuki had a "continuing objection."

Without Hyatt's testimony linking the recall condition to Soulliere's accident, Soulliere presented no evidence his motorcycle had the recall condition and therefore no evidence the recall condition was a substantial factor in causing the accident. Moreover, Soulliere's own account of the accident was inconsistent with how the recall condition affected the front brakes on Suzuki's motorcycles. There was evidence the recall condition caused only a gradual loss of braking power, but according to Soulliere his front brakes suddenly did not respond. Yet the recall evidence consumed four and a half days of the seven-day trial and accounted for 90 percent of the exhibits.

The breadth of the recall evidence and the absence of evidence linking it to Soulliere's motorcycle posed a substantial risk the jury would react emotionally and punish Suzuki for a defective condition unrelated to Soulliere's accident. As Suzuki observes, this evidence showed the recall condition "could harm someone, without evidence it harmed *plaintiff*." Suzuki suffered undue prejudice because a "manufacturer is liable only when a defect in its product was a legal cause of injury. [Citation.] A tort is a legal cause of injury only when it is a substantial factor in producing the injury." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

---

[5] It is often difficult for trial courts to make a pretrial determination under section 352's weighing process without first hearing the evidence. The better practice is to defer a ruling or explain to the parties its pretrial ruling is tentative. As our Supreme Court explained, "until the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, matters related to the state of the evidence at the time an objection is made, the court cannot intelligently rule on admissibility." (*People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3.)

19

Soulliere contends the recall evidence also was admitted on the issue of whether Suzuki had notice of a front brake problem on its motorcycles. During its extensive recall investigation, Suzuki received 50 complaints about a "spongy" or weak brake response, which led Suzuki to issue a recall. Suzuki also received five complaints about a sudden loss of braking power, four of which occurred after Soulliere's accident. Assuming these five complaints were probative on the notice issue, Soulliere offers no explanation to support admitting the 50 complaints about the recall condition that bore no relation to Soulliere's accident.

Devoting the majority of the trial to the recall evidence, admitted only for notice, unduly prejudiced Suzuki because there was a substantial risk the jury would infer liability solely from the recall condition. Consequently, the trial court erred in failing to grant Suzuki's section 352 motion to exclude recall evidence.

2. *There Was No Basis to Give the Willful-Suppression Instruction*

As noted, Southland Cycle discarded the FBMC on Soulliere's motorcycle after completing the recall work on the bike. At the time, Suzuki had no notice of Soulliere's accident; indeed, Soulliere had not yet sued Suzuki. Over Suzuki's objections, the court gave a willful-suppression instruction on the sole basis that Suzuki had a practice of destroying parts replaced in a recall even though it knew those parts were relevant to potential recall-related lawsuits. There was no legal basis to give the instruction, however. The evidence of Suzuki's purported destruction of evidence was not relevant because it could not provide Suzuki notice that Soulliere's front brake failed to respond since the recall dealt with the different problem of "spongy" brakes. Even if somehow relevant, as discussed above, the recall evidence should not have been admitted under Evidence Code section 352. Because the recall evidence was inadmissible, it was prejudicial error to give the willful-suppression instruction based on inadmissible evidence.

20

There also is no substantial evidence that Suzuki destroyed the FBMC to suppress evidence in this matter. Suzuki had no notice Soulliere planned to bring claims against it relating to the accident. Because Suzuki did not know Soulliere might file a future lawsuit, it lacked the requisite state of mind to support an inference it sought to suppress evidence. (*Reeves v. MV Transportation, Inc*. (2010) 186 Cal.App.4th 666, 681-682 [party seeking benefit from spoliation must show defendant knowingly destroyed evidence].) Because no substantial evidence shows Suzuki suppressed evidence relevant to this litigation, it was prejudicial error to instruct the jury on willful suppression of evidence. (*County of Contra Costa v. Nulty* (1965) 237 Cal.App.2d 593, 598.)

Soulliere claims the willful-suppression instruction could be given in this litigation because substantial evidence shows Suzuki intended to suppress evidence in other litigation. He cites no supporting authority, even assuming Suzuki had the duty to preserve all recalled parts based on its anticipation of some future recall-related lawsuits. Evidence Code section 413, which provides the basis for giving a willful-suppression instruction, states otherwise. It provides: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts *in the case against him*, or his willful suppression of evidence *relating thereto*, if such be the case." (Italics added.)[6]

### 3. *The Contents of the Traffic Accident Report Were Admissible*

Vehicle Code section 20013 provides that an accident report may not be used as evidence in civil or criminal trials. In *Sherrell*, *supra*, 116 Cal.App.3d Supp. 22, the appellate division of the Fresno Superior Court held that Vehicle Code section 20013 does not compel exclusion of an accident report's contents, but only the report itself, and

---

[6] We note the trial court denied discovery sanctions for Suzuki's alleged spoliation of evidence based on destruction of the FBMC, and the ruling has not been challenged on appeal.

therefore the report may be read into evidence over hearsay objection by the officer who prepared it under the doctrine of "past recollection recorded," assuming a party meets the foundational requirements of Evidence Code section 1237. (*Id.* at pp. 31-32.) The California Supreme Court later cited *Sherrell* with approval for the proposition that accident reports have limited confidentiality, mainly to bar "'[o]fficious intermeddlers, cappers, salespersons and others seeking to profit from accidents upon our highways.'" (*State of California ex. rel. Dept. of Transportation v. Superior Court* (1985) 37 Cal.3d 847, 855, quoting *Sherrell*, *supra*, 116 Cal.App.3d Supp. at p. 30.) We find *Sherell* persuasive and agree with its holding. (See also *People v. Gardner* (1957) 147 Cal.App.2d 530, 540 [A party may use a document to refresh a witness's recollection, but if the witness has no present recollection of the facts, the witness may "read directly from the writing" if the witness was "present at a conversation and has heard the same and knows the fact."].)

Because the contents of the accident report are admissible, the trial court erred in not allowing Suzuki to cross-examine plaintiff's human factor expert Gill about Shaheen's deposition testimony recounting the contents of the accident report, given that Gill stated she reviewed the testimony before opining that Soulliere's actions were appropriate.

The trial court also erred in not allowing Suzuki to call Shaheen as a witness to read the contents of the accident report into the record. As noted, the accident report recounted Soulliere's statement to Shaheen that he had locked his wheels before the collision. In the Evidence Code section 402 hearing on Soulliere's hearsay objection to Shaheen's testimony, Shaheen testified he wrote down Soulliere's statement when Soulliere called him, and had no reason to doubt its accuracy. That testimony was sufficient to establish a prima facie case for admissibility under Evidence Code section 1237. The trial court precluded Suzuki from introducing the evidence under Evidence Code section 1237 because Suzuki initially had sought to introduce the accident report to

22

refresh Shaheen's testimony, but midway through the evidentiary hearing, changed its theory of admissibility to past recollection recorded. The court held that this prejudiced Soulliere because the court assumed Soulliere's lawyer was unprepared to cross-examine Shaheen and test whether the foundation for admissibility under Evidence Code section 1237 had been met. This rationale is dubious, at best. Trial lawyers are expected to know the Evidence Code. Past recollection recorded is a well-known hearsay exception, not an arcane point of law. Any conceivable prejudice to Soulliere could have been cured by addressing the issue during the hearing since the officer was available to testify.

4. *The Judgment Must Be Reversed in Light of Multiple Errors*

As discussed, the trial court erred in admitting the extensive recall evidence, in giving the willful-suppression instruction, and in precluding Suzuki from questioning Gill about Shaheen's deposition testimony or calling Shaheen as a witness. The case was close, as evidenced by the fact that jury deliberations took two days and the jury verdict was not unanimous. (See *Bowen v. Ryan* (2008) 163 Cal.App.4th 916, 927 [erroneous admission of other-acts evidence reversible where jury deliberations were lengthy and the verdict was nine to three].) The multiple errors in this case require reversal of the judgment. "'Without attempting to analyze separately these issues of prejudice, we conclude that the cumulative effect of the errors was unquestionably to make it "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error[s]."'" (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1539.) So it is here.

## III

### DISPOSITION

The judgment is reversed. The amended judgment is vacated. The matter is remanded for the plaintiff to make an offer of proof on the admissibility of Hyatt's opinion linking the recall condition to a complete brake failure. If the trial court concludes the proffered expert testimony is inadmissible or insufficient as a matter of

23

law, the trial court shall enter judgment in favor of Suzuki on all claims. Otherwise, the trial court shall set the matter for a new trial. Suzuki is entitled to its costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.